

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-14-1997

# DeWitt v. Penn Del Directory

Precedential or Non-Precedential:

Docket 96-7163

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"DeWitt v. Penn Del Directory" (1997). *1997 Decisions.* Paper 39.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/39

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 96-7163
_____

CAROL DEWITT,

Appellant

v.

PENN-DEL DIRECTORY CORPORATION, a foreign corporation; NATIONAL
TELEPHONE DIRECTORY CORPORATION PROFIT SHARING PLAN;
NATIONAL TELEPHONE DIRECTOR CORPORATION PLAN
ADMINISTRATOR OF PROFIT SHARING PLAN
_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 93-cv-00581)
_____

Argued
December 12, 1996
Before:  BECKER, MANSMANN and LEWIS, Circuit Judges.
_____

(Filed February 14, 1997)
_____

John M. Stull, Esquire (ARGUED)
Suite 710
1220 North Market Street
P.O. Box 1947
Wilmington, DE  19899

    COUNSEL FOR APPELLANT

Francis M. Milone, Esquire (ARGUED)
Lynn A. Collins, Esquire
Morgan, Lewis & Bockius LLP
2000 One Logan Square
Philadelphia, PA  19103

    COUNSEL FOR APPELLEES
_____

OPINION OF THE COURT
_____

1

MANSMANN, Circuit Judge.

Carol Dewitt appeals from the entry of summary judgment against her in her action to recover benefits and for unlawful termination intended to preclude attainment of her rights under her profit sharing plan pursuant to sections 502(a)(1)(B) and 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a)(1)(B). Dewitt sought benefits allegedly due her as a participant of the National Telephone Directory Profit Sharing Plan for the 1990 plan year.

We are asked to decide whether the Plan Administrator acted arbitrarily and capriciously in denying additional accrued benefits to Dewitt's account balance for the 1990 Plan year by distributing Dewitt's benefits on an expedited basis, contrary to the Plan's provisions. Because we believe that the Plan Administrator's interpretation of the Plan and expedited distribution of benefits controverts the plain language of the Plan, we conclude that the Administrator acted arbitrarily and capriciously. Accordingly, we will reverse the district court's grant of summary judgment on this claim.

Dewitt also alleges that her employer terminated her on pretextual grounds with the specific intent to deny her status as a Plan participant as of the Valuation Date at the end of December 1990. Because we agree with the district court that Dewitt has not provided sufficient evidence of specific intent to interfere with her benefits, we will affirm the district court's grant of summary judgment in favor of her employer on Dewitt's section 510 claim.

2

I.

During the ten years that Carol Dewitt was an employee of Penn-Del Directory Corporation, she was a participant in the National Telephone Directory Corporation Profit Sharing Plan, an employee pension plan governed by ERISA and administered by the National Telephone Directory Corporation, a New Jersey corporation and sister corporation to Penn-Del. At the time of her termination, Dewitt was 100% vested in her account under the Plan.

Pursuant to the Plan, "Employer Contributions" and "Plan Forfeitures" are credited to the account of Plan participants on a date referred to as the Valuation Date, defined as the last business day of each December. Plan ¶¶ 5.01, 5.02, 6.02(c)-(d). The Plan requires, as a condition to receipt of these benefits, that the Plan participant be employed as of the Valuation Date. Plan ¶¶ 5.01, 5.02. In addition, the Plan provides that each participant's account will be credited with "Trust Income", i.e., the net increase or decrease in the fair market value of trust assets as measured from the last Valuation Date. Plan ¶ 6.02(e). Unlike the situation with Employer Contributions and Plan Forfeitures, the receipt of Trust Income is <u>not</u> conditioned upon the participant's employment on the Valuation Date. In order to receive Trust Income, however, a Plan participant must have a viable Plan account on the Valuation Date. Plan ¶ 6.02(3).

3

On December 12, 1990, Dewitt was terminated from her position as a sales representative, allegedly for mishandling an account. At a meeting to discuss her termination, Penn-Del Division Manager Victor Raad reviewed with Dewitt the incident that precipitated her termination. Pension benefits were also discussed. Although there is some dispute between Dewitt and Raad regarding precisely what was said at this meeting on the topic of Dewitt's benefits, both parties agree that Raad told Dewitt that it takes approximately 30 to 90 days before Dewitt would actually receive the distribution of the balance of her Plan account. Affidavit of Victor Raad, Exhibit C at ¶9. Dewitt asserts that this statement led her to believe that her distribution check would not be processed until a date well beyond the Valuation Date. Dewitt also maintains that Raad told her that her account would include Employer Contributions, Plan Forfeitures and Trust Income through the end of the 1990 Plan year. To the contrary, in his affidavit, Raad states that no discussion occurred regarding the nature of the benefits which would be included in Dewitt's check. Ex. C at ¶8.

On December 14, 1990, Dewitt filled out a request for distribution of her account balance. A check was issued two weeks later, on December 28, 1990, for Dewitt's total account balance in the amount of $75,520.88. Believing this figure to be inaccurate because it did not contain any amounts representing Employer Contributions, Plan Forfeitures or Trust Income, Dewitt contacted Raad to discuss the amount. After her conversation with Raad, Dewitt pursued an appeal pursuant to the

4

administrative process established by the Plan. Following the denial of her appeal, Dewitt filed this action.

In her complaint, Dewitt asserted claims against her former employer (Penn-Del), the Plan (National Telephone Directory Corporation Profit Sharing Plan) and the Plan's Administrator (National Telephone Directory Corp.) under ERISA for recovery of benefits and for unlawful termination intended to preclude attainment of her rights under the Plan. In Count I of her complaint, Dewitt asserts that she had a right under the Plan to receive the 1990 Plan year Employer Contributions, Plan Forfeitures, and Trust Income allocable to her account. In this Count, Dewitt alleges that defendants violated 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B). This section of ERISA permits a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of the plan." In support of her section 502(a)(1)(B) claim, Dewitt asserts that the defendants "arbitrarily and capriciously denied additional accrued benefits to [her] account balance in the Plan for the plan year 1990 by having her benefits paid on an expedited basis by the Plan Administrator, contrary to Plan provisions." Complaint ¶16, A. 64. Second, she asserts that "her account was treated arbitrarily as indicated by the method used in another former employee's Plan account payment. . . ." Id. Another terminated employee, Stephen Byrne, received Employer Contributions, Plan Forfeitures and Trust Income even though he was not technically employed at the end of the Plan year. Dewitt asserted that Penn-Del terminated Byrne on December 14, 1988, but

5

that the Plan recorded Byrne's termination date as January 3, 1989, thereby qualifying Byrne for his share of the previous year's Employer Contributions and Plan Forfeitures.  Complaint ¶16; Affidavit of Steven Byrne, A. 7.

In Count II of her Complaint, Dewitt asserts that Penn-Del discharged her to prevent her from qualifying for the 1990 Employer Contributions, Plan Forfeitures and Trust Income allocable to her account.  In this Count, she asserts that her termination violated 29 U.S.C. § 1140, ERISA § 510, which makes it "unlawful to discharge . . . a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the Plan."

On December 22, 1994, in ruling on the defendants' joint motion to dismiss, the district court dismissed Dewitt's section 502(a)(1)(B) claim for Employer Contributions and Plan Forfeitures, benefits which formed the bulk of her prayer for relief, because the terms of Dewitt's Plan expressly required that she be employed on December 31, 1990 in order to be eligible to receive those benefits, and she was not.[1]  Dewitt v. Penn-Del Directory Corporation, 872 F. Supp. 126 (D. Del. 1994) (Dewitt I).

---

1.      The court also dismissed DeWitt's section 510 claims for interference with these same benefits as barred by the applicable statute of limitations.

The court, however, declined to dismiss DeWitt's claims for 1990 Trust Income pursuant to both section 502(a)(1)(B) and 510 because it concluded that DeWitt's complaint stated those claims.  See 872 F. Supp. at 136.

The court also denied a motion for summary judgment filed by DeWitt.

On July 31, 1995, Dewitt moved for summary judgment on those claims which survived dismissal in Dewitt I. As a result of the district court's holdings in Dewitt I, only Dewitt's claims for Trust Income pursuant to ERISA §§ 502(a)(1)(B) and 510, an amount between $1,400 and $2,200, were deemed viable by the court. See 912 F. Supp. at 711. The defendants filed a cross-motion for summary judgment asserting that Dewitt was not entitled to Trust Income under ERISA § 502(a)(1)(B) because the administration of the Plan was not arbitrary and capricious, and that Dewitt was not entitled to Trust Income pursuant to ERISA § 510 because she had not met her burden of proving that Penn-Del had specific intent to interfere with her benefits.

The district court held a hearing on these motions[2] on October 22, 1995. By order dated January 17, 1996, the district court denied Dewitt's motion for summary judgment for Trust Income based both upon the terms of the Plan and upon a breach of fiduciary duty theory. Instead, the court granted the defendants' motion for summary judgment for Trust Income pursuant to ERISA § 502(a)(1)(B), based upon the reasonableness of the Plan Administrator's interpretation of the Plan and the district court's deferential standard of review of the Plan Administrator's actions. The court also granted Penn-Del's motion for summary judgment for Trust Income pursuant to section

---

2. In addition to the cross-motions for summary judgment, DeWitt also filed a motion to compel discovery responses from the defendants. Defendants moved to strike DeWitt's motion to compel discovery responses. The court denied DeWitt's motion to compel discovery and instead granted the defendants' motion to strike.

7

510 of ERISA, 28 U.S.C. § 1140. The district court found that the facts as alleged by Dewitt were not sufficient to provide circumstantial evidence of specific intent.[3] On January 29, 1996, Dewitt filed a Motion for Clarification and Reargument of

---

3.     DeWitt also sought summary judgment with respect to her request for Employer Contributions and Plan Forfeitures on the ground that the defendants breached their fiduciary duty by making misleading statements to her. The district court had previously found that DeWitt was not entitled to Employer Contributions and Plan Forfeitures in DeWitt I, 872 F. Supp. at 130, based upon the court's findings that the Plan required, as a condition to receipt of those benefits, employment as of the Valuation Date. The court observed that in attempting to renew her request for these benefits, DeWitt had changed her theory of relief from the terms of the Plan (which did not provide for those benefits), to her current argument that Employer Contributions and Plan Forfeitures should be granted to her as equitable relief for the Plan administrator's fiduciary breach caused by Raad's alleged misrepresentation of her benefits. The court concluded that DeWitt had failed to plead a breach of fiduciary duty in her complaint and, in any event, had failed to allege facts sufficient to establish an actionable claim for breach of fiduciary duty and therefore denied DeWitt's motion for summary judgment for Employer Contributions and Plan Forfeitures on the fiduciary breach theory.

As an additional ground for recovery of the previously-denied Employer Contributions and Plan Forfeitures, DeWitt also argued that the Plan was administered in an arbitrary and capricious fashion due to the disparity in treatment between her and the other employee, Byrne. The court concluded that the differential treatment of Byrne and DeWitt did not amount to an arbitrary and capricious administration of the Plan because Byrne and DeWitt were not similarly situated as presented to the Plan Administrator for the purpose of distribution of benefits. See 912 F. Supp. at 722. We will not disturb these rulings on appeal.

Finally, in her motion DeWitt sought reconsideration of the court's ruling that DeWitt's section 510 claims for Employer Contributions and Plan Forfeitures were time barred. The district court found untimely her request that it reconsider its ruling in DeWitt I that DeWitt's claims for Employer Contributions and Plan Forfeitures were time-barred because DeWitt's motion for reconsideration was not filed within ten days of the entry of judgment.

Order.  On February 15, 1996, the court denied this motion.  This appeal followed.[4]

Dewitt raises numerous issues on appeal, many of which we find to be without merit.[5]  Two principal issues remain which we address.

## II.

ERISA was "designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, 463 U.S. 85, 90 (1983).  As we have observed on many occasions, ERISA's concern is with the administration of benefit plans and not with the precise design of the plans themselves.  Indeed, in enacting ERISA, Congress did not impose a duty on employers to provide health care or other

---

4.    The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  When reviewing grants of summary judgment our scope of review is plenary.  We apply the same test the district court should have applied initially.  Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).  The proper interpretation of the Plan at issue is a question of law.  Ulmer v. Harsco Corp., 884 F.2d 98, 101-102 (3d Cir. 1989).

5.    On appeal to us DeWitt asserts, inter alia, that she is entitled to receive the Employer Contributions and Plan Forfeitures applicable to her 1990 account balance as equitable restitution based upon the Plan Administrator's fiduciary breach and because such benefits were provided to the account of another employee, Byrne.  She also challenges the district court's decision that her section 510 claims for these same benefits were time-barred.  Lastly, she contends that the district court abused its discretion by denying Dewitt's motion to compel discovery responses because Dewitt failed to comply with the requirements of Rule 7.1.1 of the Local Rules of the United States District Court for the District of Delaware.  We have reviewed each of these allegations and find that they are without merit.

benefits to their employees.  In <u>Hlinka v. Bethlehem Steel Corp.</u>,
we observed that "ERISA is not a direction to employers as to
what benefits to grant their employees.  Rather, ERISA is
concerned with the administration of an established plan and its
elements."  863 F.2d 279, 286 (3d Cir. 1988).  <u>See</u> <u>also</u> <u>Nazay v.</u>
<u>Miller</u>, 949 F.2d 1323, 1329 (3d Cir. 1991) ("The clear emphasis
of the statute is to ensure the proper execution of plans once
established.").

Pursuant to ERISA, a plan administrator must act "in
accordance with the documents and instruments governing the plan
insofar as such documents and instruments are consistent" with
ERISA's statutory requirements.  29 U.S.C. § 1104(a)(1)(D), ERISA
§ 504 (a)(2)(D).[6]  Accordingly, ERISA plans are required to be in
writing.  29 U.S.C. § 1102(a)(1).  They are to be administered by
fiduciaries who are obligated to comply with the terms of the
plan.  <u>Nazay</u>, 949 F.2d at 1329.

The award of benefits under any ERISA plan is governed
in the first instance by the language of the plan itself.  A plan
administrator may have discretion when interpreting the terms of

_____

6.       This provision provides:

(1)  Subject to sections 1103 (c) and    (d), 1342, and 1344 of
          this title, a fiduciary shall discharge his duties with
          respect to a plan solely in the interest of the
          participants and beneficiaries and --

                        *   *   *

(D)  in accordance with the documents and instruments governing
          the plan insofar as such documents and instruments
          are consistent with the provisions of this
          subchapter and subchapter III of this chapter.

the plan; however, the interpretation may not controvert the plain language of the document.  Gaines v. Amalgamated Ins. Fund, 753 F.2d 288, 289 (3d Cir. 1985).  We must uphold a plan interpretation even if we disagree with it, so long as the administrator's interpretation is rationally related to a valid plan purpose and is not contrary to the plain language of the plan.  Id. at 288.  Dewitt argues that the Plan Administrator's denial of additional benefits controverts the plain language of the Plan.

Although we exercise plenary review over the court's grant of summary judgment, our authority to review a plan administrator's decision to deny benefits is significantly more limited.  In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110-12 (1989), the Supreme Court held that where an ERISA-governed benefits plan grants discretionary authority to the plan administrator to determine eligibility for benefits under the plan, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard of review.  Thus, a fiduciary's interpretation of a plan will not be disturbed if reasonable.  Id. at 111; Heasley v. Belden & Blake Corp., 2 F.3d 1249 (3d Cir. 1993).  The Plan in this case contains a clause granting discretion to the Plan Administrator, see Plan ¶ 12.01(d);[7] thus only if the Plan Administrator's decision to deny

7.        Paragraph 12.01(d) provides:

(d)  Powers of the Committee.  The Committee is specifically
          authorized and empowered, but not by way of limitation,

(1)To construe or interpret the provisions of the Plan whenever
          necessary to carry out its intention and purpose.

11

Trust Income to Dewitt was arbitrary and capricious can we overturn his decision.

Under the terms of Dewitt's Plan, entitlement to Trust Income is contingent upon the existence of a viable account as of the Valuation Date. Plan ¶ 6.02(e). Here, Dewitt did not have an account on the Valuation Date because her act of requesting distribution of her account balance, and the processing of that request on December 28, 1996, had the effect of closing out her account. Dewitt contends that under Paragraph 8.01, the Plan Administrator was forbidden from paying out the account proceeds until January 1, 1991. Paragraph 8.01, entitled "Distribution of Benefit," provides for the timing of distribution of account proceeds as follows:

8.01    Distribution of Benefit. Any Benefit of a Participant that becomes payable under Article 7 shall be paid in the form of a single lump-sum cash distribution. Distribution shall be made under this section 8.01 as soon as practicable <u>after the end of the calendar month in which termination of employment occurs</u> . . . . (Emphasis added.)

(..continued)

(2) To engage or employ such accountants, legal counsel, other advisors, agents and such clerical, medical and other services as may be required by Applicable Law or as it may deem advisable to assist in the administration of the Plan.

(3) To establish from time to time rules for the administration of the Plan and the transaction of its business. The determination of the Committee as to any disputed question arising hereunder including, but without limitation, questions of construction, administration and interpretation shall be final and conclusive upon all persons including, but not by way of limitation, Employees, Participants and Beneficiaries; their heirs, distributees and personal representatives; and any other person claiming an interest under the Plan.

12

The Plan Administrator argues that Paragraph 8.01's mandatory language is reasonably construed to be directed at protecting the Plan participant from "unreasonable delay" in receipt of benefits. He relies on Paragraph 8.03 of the Plan which directs the Trustee to make distributions "as soon as is reasonably practicable" after receiving notice of the distribution from the Plan committee. This provision of the Plan provides:

> 8.03 <u>Notice to Trustee.</u>
>
> The Committee shall notify the Trustee whenever any Participant or Beneficiary is entitled to receive a distribution under the Plan . . . upon receipt of such notice from the Committee, the Trustee <u>will, as soon as is reasonably practicable,</u> distribute such amount . . . . (Emphasis added).

The Plan Administrator argues that it was "reasonably practicable" to make a distribution to Dewitt on December 28 and that she could not complain because she received her distribution earlier than she had expected or hoped. The Plan Administrator argues that Dewitt failed to state a claim because she "requested and received a distribution of her benefits prior to the last business day of December," thereby forfeiting any interest in the 1990 Trust Income otherwise allocable to her account.

The district court agreed with this interpretation that Paragraph 8.01 prevented the Plan from taking too long to pay out benefits but contained no prohibition on paying early. The court held, "It is not unreasonable to interpret Paragraph 8.01 as setting the `subsequent month' rule for payment merely as a

13

mechanism to ensure prompt payment and avoid unreasonable delay which may adversely effect the Plan participant."  912 F. Supp. at 719.  The court found that this interpretation was not arbitrary and capricious, but rather, was grounded in the letter and spirit of the provision.  We disagree.

Even under our deferential standard of review, we conclude that the Plan Administrator's interpretation of these Plan provisions is unreasonable, because it disregards the language of the Plan which expressly provides that "Distribution shall be made . . . as soon as practicable <u>after the end of the calendar month</u> in which termination of employment occurs. . . ." Plan, ¶8.01.  A Plan participant reading this provision could believe that it clearly prohibited distribution of an account prior to the end of the calendar month in which the employee was terminated.  Dewitt was thus entitled to the Trust Income from her account because the Plan Administrator acted in violation of this Plan provision which prohibits the Plan Administrator from making a final distribution prior to January 1, 1991, the month following the calendar month in which Dewitt's termination of employment occurred.

Accordingly, we conclude as a matter of law that the Plan Administrator's interpretation of the Plan was inconsistent with the plain language of the Plan and, therefore, there was no reasonable basis for the Plan Administrator's denial of benefits. We will reverse the judgment in favor of Penn-Del on Dewitt's

14

claim for Trust Income and direct that summary judgment be entered in favor of Dewitt on this claim.[8]

### III.

Section 510 of ERISA, 29 U.S.C. § 1140, provides:

§ 1140. <u>Interference with protected rights</u>

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan. . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

Congress enacted section 510 primarily to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits."  <u>Haberern v. Kaupp Vascular Surgeons Ltd.</u>, 24 F.3d 1491, 1501 (3d Cir. 1994) (citations omitted).

In Count II of her complaint, Dewitt alleges that "[t]he Company and Raad . . . discharged her from her employment

---

8.      In her appeal DeWitt also argued that she was entitled under ERISA § 502(a)(1)(B) to the Trust Income for the 1990 Plan year based upon the Plan Administrator's fiduciary breach in expediting payment in violation of the Plan's terms and an IRS Notice Regulation requiring 30 to 90 notice days prior to distribution.  DeWitt asserts that the Plan Administrator committed a fiduciary breach by "rushing payment in order to remove [her] account from the books of the plan before the end of the year."  DeWitt contends she is also entitled to restitution as an equitable remedy because of the misleading statement made by Raad.  Because we conclude that DeWitt is entitled to Trust Income under the terms of her Plan, we do not reach the merits of her claim that she is entitled to this same Trust Income based on the theory of fiduciary breach.  <u>See</u> <u>Hein v. Federal Deposit Insurance Corp.</u>, 88 F.3d 210 (3d Cir. 1996).

15

on a pretextual basis on December 12, 1990, with specific intent to deny her status as a participant in the Plan prior to the end of the calendar year and thereby specifically intended to deny and interfere with the accrual of additional accrued benefit amounts due her account, in violation of ERISA section 510, 29 U.S.C. § 1140."  Complaint ¶24.

To establish a prima facie case under section 510 of ERISA, Dewitt must demonstrate:

1.  prohibited employer conduct;

2.  taken for the purpose of interfering;

3. with the attainment of any right to which the employee may become entitled.

Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir.), cert. denied, 484 U.S. 979 (1987), 29 U.S.C. § 1140.  If Dewitt succeeds in establishing each of these elements, a rebuttable presumption is created that section 510 has been violated. Gavalik, 812 F.2d at 853.

Interpreting section 510 of ERISA in Gavalik, we held that in order to recover under section 510, a plaintiff need not prove that "the sole reason for his [or her] termination was to interfere with pension rights."  Nonetheless, a plaintiff must demonstrate that the defendant had the "specific intent" to violate ERISA.  812 F.2d at 851.  Proof of incidental loss of benefits as a result of a termination will not constitute a violation of section 510.  Id.  (Citing Titsch v. Reliance Group, Inc., 548 F. Supp. 983, 985 (S.D.N.Y. 1982), aff'd, 742 F.2d 1441 (2d Cir. 1983) ("No ERISA cause of action [under § 510] lies

16

where the loss of . . . benefits [i]s a mere consequence of, but not a motivating factor behind, a termination of employment.")).

Consequently, to recover under section 510, the employee must show that the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits. Gavalik, 812 F.2d at 860. We have recognized that in most cases, however, "smoking gun" evidence of specific intent to discriminate does not exist. As a result, the evidentiary burden in these cases may also be satisfied by the introduction of circumstantial evidence. Id. at 851 (citing Maxfield v. Sinclair Int'l, 766 F.2d 788, 791 (3d Cir. 1985), cert. denied, 474 U.S. 1057 (1986)). Dewitt asserts that she has indeed established such a circumstantial case "by combining the factors of her termination, expedited distribution as compared with the plain terms of the Plan, the comparable situation of Steven Byrne, and the misleading statements made by Raad." We address each factor alone and in combination.

We begin our analysis with Dewitt's proffer of her termination on December 12, two weeks prior to the Valuation Date.[9] In Turner v. Schering-Plough Corp., we observed that "where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other

_____

9.     DeWitt acknowledges that the mere fact that she was terminated near the end of the year, standing alone, would be insufficient to support a section 510 claim.

17

possible reasons for which an employer might have discharged him."  Turner, 901 F.2d 335, 347 (3d Cir. 1990) (quoting Clark v. Resistoflex Co., 854 F.2d 762, 771 (5th Cir. 1988)).  This kind of deprivation occurs every time an ERISA employer discharges an employee and is not alone probative of an intent to interfere with pension rights.  Accordingly, a prima facie case requires additional evidence suggesting that pension interference was a motivating factor.

With respect to the expedited distribution of benefits, there is nothing in the record to suggest that the prompt payment of Dewitt's benefits by the Plan Administrator was made in order to avoid paying her amounts which would be due on December 31, 1990, and that this was done by the Plan Administrator to achieve some benefit for the employer.  We observe as we did in Turner, supra, that "the record contains no evidence that the savings to the employer resulting from [the plaintiff's] termination were of sufficient size that they may be realistically viewed as a motivating factor."  See Turner, 901 F.2d at 347.[10]  Here, too, the savings to Penn-Del and its Plan were not sufficiently significant to be a motivating factor.

10.      Indeed, the expedited distribution of DeWitt's account balance did not result in any additional savings to her employer or to the Plan in terms of DeWitt's entitlement to the Employer Contributions and Plan Forfeitures allocable to her account.  Due to the fact that DeWitt was terminated on December 12, 1990, under the terms of her Plan, she was no longer eligible to receive these benefits in any event.  Plan ¶¶5.01, 5.02 and 6.02(c)-(d).

With respect to the Trust Income allocable to her account, the distribution of DeWitt's account prior to January 1, 1991, resulted in a savings of approximately $1,400-$2,200.

18

Likewise, we are not persuaded that Raad's alleged misrepresentation regarding the timing for distribution of benefits gives rise to an inference of specific intent to interfere with Dewitt's benefits. Significantly, Raad's alleged statements could not have affected Dewitt's receipt of Employer Contributions or Plan Forfeitures which, under the terms of the Plan, are available only to those employed on the Plan's Valuation Date. Plan ¶¶5.01, 5.02. As well, as we pointed out above, these statements could not affect Dewitt's entitlement to the Trust Income allocable to her account pursuant to Paragraph 8.01 of her Plan.

Lastly, we agree with the district court that the manner in which Byrne's benefits were handled by the Plan Administrator are not relevant. Even assuming that the Plans for Dewitt and Byrne were identical, and the record does not inform us one way or the other, Dewitt's employer had elected to make Byrne's termination effective on January 3, 1989, but fired Dewitt on December 12, 1990. Because Dewitt was an at-will employee, her employer could terminate her employment, for any reason and on any date the employer chose. Thus, "[e]ach former employee's respective position relative to the Valuation Date renders the differential treatment of their benefits proper." See 912 F. Supp. at 720.

Because we agree with the district court that all of these facts, taken together, do not constitute sufficient evidence of an intent to interfere with benefits, we will affirm

19

the court's grant of summary judgment in Penn-Del's favor on this claim.

### IV.

For the foregoing reasons we will reverse the district court's entry of summary judgment against DeWitt on the claim for Trust Income pursuant to section 502(a)(1)(B) of ERISA. We will affirm the judgment of the district court on DeWitt's section 510 claim and in all other respects.

CAROL DEWITT, APPELLANT V. PENN-DEL DIRECTORY CORPORATION, A FOREIGN CORPORATION; NATIONAL TELEPHONE DIRECTORY CORPORATION PROFIT SHARING PLAN; NATIONAL TELEPHONE DIRECTOR CORPORATION PLAN ADMINISTRATOR OF PROFIT SHARING PLAN, NO. 96-7163

BECKER, CIRCUIT JUDGE, CONCURRING IN PART, DISSENTING IN PART:

Although I join in parts I and III of the majority's opinion, I cannot agree with the conclusion that the majority reaches in part II as to the proper interpretation of the ERISA plan at issue. Unlike the majority, I do not believe that the plan administrator acted arbitrarily or capriciously in interpreting the plan to allow the distribution of benefits in the same month in which the termination of employment occurs.

### I.

The relevant provisions of the ERISA plan at issue are Paragraphs 8.01 and 8.03, both of which are excerpted in the majority opinion. The plain language of the two paragraphs does

not, as the majority contends, lead ineluctably to a single interpretation. Rather, when read together, the two paragraphs are ambiguous. On the one hand, Paragraph 8.01 requires that distribution of benefits be made "as soon as practicable after the end of the calendar month in which . . . termination of employment occurs . . . ." On the other hand, Paragraph 8.03 requires that, when he is notified that a beneficiary is due benefits, the Trustee of the plan will distribute the benefits "as soon as is reasonably practicable." Paragraph 8.03 goes no further in describing when the distribution is to be made.

Therefore, assuming that a beneficiary is entitled to a distribution, there is the possibility of conflicting demands on the Trustee. If, as was the case here, it was reasonably practicable for the Trustee to distribute the benefits before the end of the calendar month in which the termination occurred, is the Trustee to wait for the month to end, as Paragraph 8.01 suggests, or, is the Trustee to distribute the benefits when they are ready, as Paragraph 8.03 suggests?

In my view, given the ambiguity inherent in Paragraphs 8.01 and 8.03, the plan administrator did not act arbitrarily or capriciously in interpreting the plan to mean that distribution of benefits would occur in this case as soon as reasonably practicable. Certainly, the language itself allows for this as one possible reading of the plan. This is especially so because it is sound policy and makes good sense to encourage plan administrators to distribute benefits due beneficiaries sooner rather than later. More often than not, beneficiaries need their

21

benefits immediately; delaying distribution might be highly detrimental.[11] Requiring the plan administrator to wait to distribute the benefits until the end of the calendar month in which the termination of employment occurs would inject unnecessary delay into a process that should function expeditiously.

In sum, I cannot fault the plan administrator for expediting the distribution of DeWitt's benefits in this case.[12] I would therefore affirm the judgment of the district court in all respects.

---

[11]Although she did not communicate her need to her employer, DeWitt's own situation provides an example. DeWitt stated in her deposition that she needed her distribution almost immediately. She did not know how long she would be out of a job, and she wanted to help her son, who had just entered college, with his tuition.

[12]I am troubled by Raad's failure to inform DeWitt that if she were to wait until after the Valuation Date to fill out a request for a distribution of her benefits she would be ensured of receiving a greater distribution. However, as the majority notes supra in footnotes 3 and 5, DeWitt failed to allege facts sufficient to show that Raad stood in a fiduciary relationship to her. Moreover, even assuming such a fiduciary relationship, Raad did not have a duty to inform DeWitt that waiting to request a distribution might be beneficial; DeWitt did not allege that she made known to Raad any facts that would create such a duty. See In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig., 57 F.3d 1255, 1261-67 (3d Cir. 1995) (describing the scope of the affirmative fiduciary duty to provide ERISA beneficiaries with information about the ERISA plan); Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1301-03 (3d Cir. 1993) (same).

22