**Tyra D. BLAIN, Plaintiff,**

v.

**BELL ATLANTIC OF PA., Defendant.**

**No. CIV. A. 98–2122.**

United States District Court,
E.D. Pennsylvania.

March 22, 1999.

Richard B. Moore, Philadelphia, PA, for Tyra D. Blain, Plaintiff.

Tyra D. Blain, Philadelphia, PA, pro se.

Lynne Delanty Spencer, Mary Minehan Mc Kenzie, Bell Atlantic Network Services, Inc., Philadelphia, PA, Harry T. Jones, Jr., Lily M. Garcia, Hogan and Hartson, Washington, DC, for Bell Atlantic of PA., Defendant.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Plaintiff Tyra Blain alleges that she was illegally fired by Bell Atlantic. Before the court is defendant's motion for summary judgment.

### Factual Background

Ms. Blain worked for Bell as a customer service representative, beginning in July 1994. While at work on December 29, 1995, she complained of chest pains and shortness of breath in connection with having an anxiety attack. She was taken by ambulance from work to the emergency room, where she was examined, advised to take Tylenol, and released. Ms. Blain requested disability benefits (under the Bell Atlantic Sickness and Accident Disability Benefit Plan, or "SADBP") for the month of January. That request was granted, and the Health and Safety Management Center ("HSMC," part of the Human Resources Department) assigned her a return-to-work date of January 29, 1996.[1]

The assigned HSMC employee, Teresa Mack, talked to Ms. Blain's treating psychiatrist, Dr. Edwin Nii Adom, on January 29. Based on that conversation, in which Dr. Adom indicated a need for further analysis of Ms. Blain's condition and promised additional documentation, Ms. Blain's disability certification was extended from January 28 to February 25, 1996. Ms. Mack informed Ms. Blain of that decision and the requirement that she submit additional documentation in a telephone con-

---

1. No diagnosis of a panic or anxiety disorder was ever submitted to Bell. At her deposition Ms. Blain stated that her doctor "couldn't come to any type of conclusion, that I'm aware of. But I know that I was going through panic disorders and anxiety." See Ex. 3 at 73. The letter Bell sent to Ms. Blain certifying her disability does not name what disability is certified. See Ex. 5, Att. 2.

versation on January 29. *See* Ex. 5 ¶ 5; Ex. 5, Att. 1 at 11.

Ms. Blain did not return to work on February 26, and neither she nor Dr. Adom provided any additional documentation to support an extension of her disability period. Her benefits were thus suspended on February 26, effective the same day. Ms. Blain was informed of the suspension of her benefits in a letter from HSMC dated February 28. *See* Ex. 5, Att. 4.

On April 12, Ms. Blain's immediate supervisor, Isabella Coates, contacted HSMC for an update on Ms. Blain's disability status, and she was told that Ms. Blain's benefits had been suspended. See Ex. 10 ¶ 4; Ex. 5, Att. 1 at 9. Satisfied that Ms. Blain's absence was unexcused, Ms. Coates sent her a letter stating that unless she returned to work by April 18, she would be terminated. *See* Ex. 9 (warning that "you have been absent without leave from work since your benefits were suspended on February 26"). Ms. Blain received the letter, *see* Ex. 3 at 65, but she did not return to work.

HSMC received a letter from Dr. Adom dated April 23 which stated,

The presenting systomatology has eluded all her physicians including myself.... At this time it is my Medical Professional opinion that Ms. Tyra Blain is not physically or emotionally stable to resume full or part time work.... I wish to regret that the delay in furnishing you this medical information. I was of the opinion that you had heard from one of her attending physicians already. Ex. 5, Att. 5. Based on this letter, Bell "conditionally extended retroactively" Ms. Blain's benefits from February 26 through May 14. Ms. Mack's declaration explains, "This conditionally certified period of disability could be shortened depending on the information obtained from Blain's health care providers." Ex. 5 ¶ 7; Ex. 5, Att. 7 (letter sent to Ms. Blain explaining same). HSMC informed Ms. Blain of this conditional extension on April 24 in a Notice of Reinstatement of Benefits and a Notice of Duration of Certified Period of Disability. *See* Ex. 5, Att. 6; Ex. 5, Att. 7.

Because the information provided by Dr. Adom was vague, HSMC ordered a Psychiatric Medical Consult by Dr. Bruce Smoller to obtain more information. Ms. Mack's declaration states what happened next: "Based on a conversation between Dr. Smoller and Dr. Adom in which Dr. Adom stated that Blain had never had any disability, on May 6, 1996 HSMC Director Pat Gahl decided to suspend Blain's disability benefits for the period of February 29, 1996 to May 14, 1996." Ex. 5 ¶ 8. A May 6 entry in the Case Summary Notifier (a log kept by HSMC recording each action taken in Ms. Blain's case) reflects the receipt of a report from Dr. Smoller and quotes him as saying Ms. Blain had no specific impairment and that she was not disabled according to either Dr. Adom or Dr. Smoller. Ex. 5, Att. 1 at 7.[2] In notifying Ms. Blain for the reason for the suspension of her benefits, The May 6 Notice

---

**2.** The relevant portions of the quotes from Dr. Smoller's reports are as follows:

"Spoke with Dr. [A]dom. He felt that after seeing her twice that she is either malingering or has problems outside the range of psychiatry. He felt strongly [t]hat patient did not have panic attacks and that she should see her cardiologist or gynecologist but that her p[ro]blems if any did not lie in the area of psychiatric disease."

Specific Impairment: "None"

. . . .

Date provider states able to resume work: "Patient never had any disability."

Ex. 5, Att. 1 at 7. Another entry on May 3 indicates a voice mail was received from Dr. Smoller: "Message left from Dr. Smoller saying that Dr. Adom called him back and Dr. Adom told him that [patient] is malingering and not a psych problem and physician expressed anger to Dr. Smoller that he was being used by [patient]." *Id.* The record contains neither Dr. Smoller's report nor a declaration by him, nor any evidence on this point from Dr. Adom.

of Denial of Application for Extension of Benefits simply checked a box next to, "As of the date stated in the attached letter [February 26], you were not unable to work due to sickness or injury." Ex. 5, Att. 8.

Also on May 6, Ms. Coates sent Ms. Blain a letter terminating her as of April 18. *See* Ex. 11. The stated reason was that "you did not report to work on April 18, 1996 as required." *Id.* In a declaration, Ms. Coates states that before sending the letter, she checked with HSMC to verify that Ms. Blain's absence was not certified. *See* Ex. 10 ¶ 5. The HSMC log reflects that Ms. Mack called Ms. Coates on May 6 and advised her that Ms. Blain's benefits had been suspended as of February 26. *See* Ex. 5, Att. 1 at 6.

HSMC received a letter dated May 6 from a Nurse Practitioner saying,

> [W]e have been asked by Ms. Blain to inform you of the risk of premature labor based on her recent visit with her gynecologist. Considering the symptoms of premature contractions, a diagnosis of cervical thinning, and a risk of premature delivery, we would support her absence from work at this time and extending through the last month of her pregnancy.

Ex. 5, Att. 9. Ms. Mack's declaration explains that this letter did not persuade HSMC to reinstate Ms. Blain's benefits for several reasons: The letter did not address the disability Ms. Blain had previously claimed, it did not represent that Blain's pregnancy complications had existed prior to the date of the letter, the medical information supplied was lacking in the required details under SADBP rules, and normal pregnancy complications do not qualify as a disability under SADBP standards. *See* Ex. 5 ¶ 9. On May 7, HSMC sent Ms. Blain a Notice that Additional Information Is Insufficient to Prove Eligibility for Benefits. *See* Ex. 5, Att. 10.

Ms. Blain appealed her denial of benefits, first to the Benefit Claims Committee and then to the Benefit Appeals Committee. Both committees upheld the suspension of her benefits for the reason that she had submitted no medical documentation supporting her claim of disability after February 26. *See* Exs. 16, 17.

*Discussion* [3]

At the outset, an examination of just what claim is present in this case is necessary. In the form Complaint Ms. Blain filed pro se, this is her full statement of her claim:

> On 2–26–96 my benefits had been suspended until further documentation from my doctors had been submitted or verified. I advised acting manager Aluster Farmer on or about 4–3–96 I was unable to return to work and my doctors were trying to pinpoint my disability. On April 16, 1996 I rec[eived] a letter from my supervisor Isabelle Coates stating if I did not return I would be separated from the payroll. I

**3.** Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences must be drawn in favor of, the non-moving party. *See id.* at 256, 106 S.Ct. 2505.

The moving party has the burden of showing there are no genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mathews v. Lancaster General Hosp.,* 87 F.3d 624, 639 (3d Cir.1996). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989).

did not return and on April 23, 1996 my doctor sent a letter to benefits and benefits reinstated me retroactive from 2–25–96 through 5–15–96. I am filing a wrongful termination lawsuit because a supervisor was notified that I was unable to return and my [time] to appeal their decision had not expired. I had 60 days to contact benefits.

Compl. ¶ 3. In the Request for Appointment of Attorney filed with her complaint, she stated, "I was wrongfully discharged because my supervisor terminated me before my benefits were exhausted." *See* Request ¶ 4. From these, it is difficult to tell what, if any, federal claim is asserted in the case.[4] From the complaint itself, it appears that Ms. Blain intended this lawsuit to be one simply for "wrongful termination." If so, there is no federal claim. Due to plaintiff's pro se status, and because the statement suggests an allegation that the termination was connected with

4. The record contains no citizenship information about the parties, so this court can only have subject matter jurisdiction if there is a federal claim.

5. Ms. Blain filed a charge with the EEOC and PHRC against Bell on December 13, 1996. It originally alleged sex and disability discrimination, and was amended to include an allegation of race discrimination as well. Both the PHRC and the EEOC dismissed the complaint. *See* Exs. 19, 20.

6. With three additional sentences stating that plaintiff believes summary judgment should not be granted and that the case should be permitted to proceed to trial, this is plaintiff's entire response to the motion. Plaintiff submits no evidence, nor does she point to any particular evidence submitted by defendant. The court has conducted a thorough independent examination of the record, including the entirety of Ms. Blain's deposition testimony.

7. A hostile work environment is only actionable if it constitutes a form of unlawful discrimination. Ms. Blain alleges only a hostile work environment in the abstract, and does not allege that it was hostile because of her race, sex, or disability. Mainly, it appears to stem from her feeling that she was being "stalked" at work and that her time was being watched very closely. *See, e.g.,* Ex. 3 at 125.

plaintiff's disability and/or benefits, the court allowed the case to go forward.[5] Plaintiff is now represented by counsel but has not filed any amended pleading clarifying the claim.

■ In its motion, defendant makes a commendable attempt to defend against any claim suggested by Ms. Blain's deposition testimony. Plaintiff's response then picks up on those claims, saying that the facts of the case demonstrate each of them: "The facts in this case set forth the causes of violation of the ERISA section 510[,] hostile work environment, discrimination and treatment different from other employees." Pl. Memo. to Mot. for Summ. J.[6] No matter how generously the complaint is read, however, it cannot be made to state a claim for hostile work environment, discrimination, or treatment different from other employees. Furthermore, even if the complaint were read to include these claims, they would be meritless.[7]

Her claim of treatment different from other employees stems from her allegations that she was treated differently in various ways from other women who took maternity leave: She alleges that one woman's disability was certified more easily than Ms. Blain's, and another woman was offered a refresher course upon returning from maternity leave. *See id.* at 119, 120–21. She alleges that a third woman was given a special work schedule so that she could be with her children. *See id.* at 110–17. The claim of treatment different from other disabled employees simply is not recognized by law, unless the basis of the different treatment is illegal. Here, the others were all women, and Ms. Blain said both black and white women were treated differently than her. *See id.* at 179–80.

The harassment charge involves the same conduct as the hostile environment charge and that she and her doctors were harassed by being required to provide medical information about her disability. *See id.* at 199. Again, she does not allege it was on the basis of race or her membership in any other protected class. Like hostile work environment, harassment in the abstract is not actionable.

The court notes that at the end of Ms. Blain's deposition, counsel discussed the possibility of plaintiff filing an amended complaint, but plaintiff did not then do so. The only complaint in the case is the one filed by Ms. Blain pro se, set forth above.

The court notes in particular that at her deposition Ms. Blain explicitly stated that this case is not one for race discrimination. *See* Ex. 3 at 179. In fact, she is a plaintiff in another lawsuit in another district in which 125 past and present African–American employees allege various forms of race discrimination against Bell. *See* Ex. 18. The allegations in that case relating to Ms. Blain are based on substantially the same facts as those involved here. *See id.* ¶ 90.

Reading plaintiff's complaint in combination with her deposition testimony, Bell has interpreted Ms. Blain as alleging an ERISA § 510 violation. This statute makes it unlawful for an employer to take any personnel action for the purpose of interfering with an employee's attainment of benefits. *See* 29 U.S.C. § 1140. In this regard, the gravamen of plaintiff's complaint seems to be captured in this exchange at her deposition:

A: I was approved to receive benefits retroactive from February up and through May 15th. I was approved to receive reinstatement of benefits. I never received payments.

Q: You never actually got a check?

A: Exactly, because my supervisor had terminated me.

Q: Did you actually have your approval for benefits revoked at some point after that time?

A: After that supervisor had notified them that she had already terminated me, they sent me a denial letter saying that they had denied them retroactive February up and through May 15.

Q: Are you suggesting that they sent you a denial letter because your supervisor notified them that you were terminated?

A: Exactly.

Ex. 3 at 64.

To make out a prima facie claim under ERISA for interference with protected rights, plaintiff must demonstrate the following elements: (1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled. *See Dewitt v. Penn–Del Directory Corp.,* 106 F.3d 514, 522 (3d Cir.1997). Although plaintiff need not prove that interference was the sole reason for her termination, she must demonstrate that the defendant had the specific intent to violate ERISA. *See id.* Consequently, "to recover under section 510, the employee must show that the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits." *Id.* at 523.

Ms. Blain cannot show that Bell acted with specific intent to interfere with her receipt of benefits. The record shows that the decision to suspend her benefits was made independently of, and prior to, the decision by Ms. Coates to terminate her. Ms. Coates's declaration establishes that her decision to terminate plaintiff came after learning of the suspension of her benefits. *See* Ex. 10 ¶ 5. In fact, the reason for firing her was directly linked to the suspension of her benefits, because it was the suspension that made her absence unexcused.[8] Further, Ms. Mack's declaration and the documents related to the information HSMC had about Ms. Blain demonstrate that HSMC had a legitimate basis for suspending her benefits; namely, they believed that she was not disabled, and they lacked any medical information to the contrary. *See* Ex. 5. Ms. Blain's speculation, in her deposition testimony quoted above, that her benefits were suspended because she was terminated is not at all supported by the record. Because HSMC decided to suspend Ms. Blain's benefits

---

**8.** To further support that Ms. Blain's termination was because of missing work, Bell submits her attendance records, which show that she had been warned about poor attendance throughout her employment there. *See* Exs. 1, 2, Atts. to Ex. 3.

before she was fired, and Ms. Coates knew about the suspension before she fired her, Ms. Coates could not have fired her with the intention of affecting her receipt of benefits.

Moreover, it does not appear that plaintiff's termination interfered with her ability to receive benefits. Defendant submits an declaration from a Bell benefits specialist in charge of administering the SADBP stating that "termination of employment has no effect whatsoever on an employee's then-pending application for SADPB benefits." Ex. 22 ¶ 2. Ms. Blain continued the appeal process long after her termination. Both appeals committees rejected her appeal on the merits, and neither found the appeal to be moot or otherwise relied on her termination in any way to deny her benefits. *See* Exs. 16, 17. Because plaintiff cannot show that Bell acted with the specific intent to interfere with her benefits, nor that her termination actually did so interfere, she cannot make out an ERISA § 510 violation.

*Conclusion*

For the above reasons, plaintiff has not shown the existence of a genuine factual dispute as to any cognizable claim. Defendant is entitled to summary judgment. An appropriate Order follows.

### ORDER

**AND NOW,** this 22nd day of March, 1999, upon consideration of Defendant's Motion for Summary Judgment, and plaintiff's response in opposition thereto, it is hereby **ORDERED** that the said motion is **GRANTED,** for the reasons set forth in the foregoing Memorandum.

It is further **ORDERED** that the following motions are **DENIED as moot:** (1) Defendant's Motion in Limine to Exclude Time–Barred Evidence of Alleged Harassment and (2) Defendant's Motion to Strike Jury Demand.

### JUDGMENT

**AND NOW,** this 22nd day of March, 1999, it is hereby **ORDERED** that judgment is entered in favor of the defendant and against the plaintiff.