

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-10-2007

# Scully v. Alghny Ludlum Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2252

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Scully v. Alghny Ludlum Corp" (2007). *2007 Decisions.* Paper 109.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/109

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2252
_____

J. PATRICK SCULLY,

Appellant

v.

ALLEGHENY LUDLUM CORPORATION;
ALLEGHENY TECHNOLOGIES INCORPORATED;
JOHN SCARFUTTI; DAVID MURPHY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-01852)
District Judge:  Honorable Joy F. Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
May 15, 2007

Before:  FISHER, NYGAARD and ROTH, *Circuit Judges*.

(Filed:  December 10, 2007)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

J. Patrick Scully sued his former employer, Allegheny Ludlum Corporation,[1] and two former supervisors. He alleged that in terminating him, they violated the Age Discrimination in Employment Act (ADEA), the Pennsylvania Human Relations Act (PHRA), and the Employee Retirement Income Security Act (ERISA). The District Court granted summary judgment in favor of Allegheny Ludlum. We will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Scully worked at Allegheny Ludlum for more than twenty-eight years. Following an economic downturn, Allegheny Ludlum decided to cut costs by reducing its work force. Gary Phillips, Scully's direct supervisor, suggested to John Scarfutti, Vice President for Human Resources, that his department could move forward without Scully. Scarfutti designated Scully for potential termination. He then directed Phillips to conduct

---

[1]Allegheny Ludlum is a subsidiary of Allegheny Technologies, Inc. Allegheny Technologies was dismissed from the suit with the filing of Scully's second amended complaint.

a "peer analysis"[2] to determine whether to terminate Scully or Gerald Moser. Phillips's analysis gave higher scores to Moser.

The next day, Scully was informed that his position was being eliminated. Scully's supervisors presented him with a proposed release agreement under which the company would provide Scully twenty-six weeks' base pay, outplacement services, and a "70/80 pension," in exchange for a release of legal claims against the company. Scully did not sign the release. At this time, Scully was already entitled to the 70/80 pension. He was also fifty-three years old and less than two years from reaching eligibility for a significantly more generous pension. Meanwhile, Allegheny Ludlum retained Moser, who was thirty-seven.

Scully brought this action against Allegheny Ludlum and two of its employees. The defendants moved for summary judgment, and the District Court granted their motion and dismissed all of Scully's claims. Scully now appeals.

## II.

We have jurisdiction under 28 U.S.C. § 1291. Our standard of review of an order granting summary judgment is plenary. *Carrasca v. Pomeroy*, 313 F.3d 828, 832 (3d Cir. 2002). "We apply the same test employed by a district court under Federal Rule of Civil Procedure 56(c)." *Id.* Thus, the District Court's grant of summary judgment "was proper

---

[2]A "peer analysis" is triggered when more than one employee holds a given position and a supervisor must decide which employee will be terminated. The supervisor rates employees' performance in essential job functions (80% of score), attendance (10%), and years of service (10%).

3

only if it appears that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 832-33 (internal quotation marks and citation omitted). Scully, the non-moving party, is "entitled to every favorable inference that can be drawn from the record." *Id.*

## III.

Analysis of Scully's ADEA and PHRA claims is governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, an employee must first establish a prima facie claim of discrimination, after which the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. *Id.* at 802. If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable fact-finder to find, by a preponderance of the evidence, that the employer's reasons are false or pretextual. *Id.* at 804-05.

Allegheny Ludlum conceded that Scully established a prima facie claim of age discrimination. However, it offered the following as legitimate, non-discriminatory reasons for the employment decision: the company's downsizing initiative, the peer analysis process, Scully's past performance problems, and his disciplinary record.

The burden then shifted to Scully to cite some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve Allegheny Ludlum's articulated explanation, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of his termination. As Scully

4

correctly argues, one of these is sufficient; the employee does not have to prove both that the explanation is implausible and that discrimination was a motivating factor. *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494-95 (3d Cir. 1995).

Scully cannot carry his burden by showing that Allegheny Ludlum's decision was "wrong or mistaken." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Rather, he must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Id.*

Scully presented evidence that Scarfutti decided to terminate Scully well before Phillips conducted a peer analysis, and that the peer analysis process was pro forma and was manipulated to ensure that Scully would be terminated without leaving the company vulnerable to litigation. In addition, Scully argues that the pension benefit calculations that took place before the termination decision was final show that Allegheny Ludlum's proffered reasons were pretextual. The District Court rejected these arguments, reasoning that even if they were true, they did not impugn Allegheny Ludlum's legitimate non-discriminatory reasons for the termination. We agree.

Scarfutti's involvement in the decision to terminate Scully does not indicate that Scully's age was a factor. Scarfutti knew Scully well, as he had been Scully's direct supervisor for several years, and it is only logical that his input was part of the termination decision. Contrary to Scully's assertions, the timeline of his termination is not suspicious. Prior to the peer analysis, his name was put on a list of employees for

5

possible termination. However, during the time period when management was discussing and implementing the downsizing, all departments of Allegheny Ludlum created lists of employees for potential termination. The presence of Scully's name on this list is not an indication of improper consideration of his age.

The same reasoning holds true for the calculations of Scully's pension benefits, which took place more than a month before his termination. First, the record does not show who asked for the calculations; it could have been Scully himself. Second, the context of the calculations is important. Allegheny Ludlum was in economic distress and was implementing significant company-wide downsizing. In this situation, calculations of various employees' pension benefits would be expected and do not undermine the company's proffered explanations for Scully's termination.

Scully argues that the peer analysis results were fabricated post hoc, and that the process was fundamentally flawed. He is correct that peer analysis was discussed within management as an effective tool for shielding Allegheny Ludlum from liability. However, the record demonstrates that peer analysis also served a substantive managerial function, and its defensive legal purpose does not support Scully's claim that he was terminated because of his age.

We have reviewed the remainder of Scully's arguments, and we conclude that he has failed to carry his burden of showing that Allegheny Ludlum's legitimate

nondiscriminatory reasons for terminating him were pretextual.[3]  Therefore, the District

Court properly granted summary judgment for Allegheny Ludlum, and the individual

defendants cannot be liable under the PHRA for aiding and abetting discrimination.

IV.

Section 510 of ERISA "makes it unlawful to interfere with the attainment of rights

or benefits associated with an employee benefit plan."  *DiFederico v. Rolm Co.*, 201 F.3d

200, 203 (3d Cir. 2000).  Scully was terminated while he was eligible for a pension

benefit of approximately $850 per month.  In less than two years, with the attainment of

thirty years' seniority, he would have been eligible for a pension benefit of more than

$2,700 per month beginning at age 65.

Scully must demonstrate that Allegheny Ludlum had the specific intent to violate

ERISA.  *DeWitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997).  We

have explained that:

> where the only evidence that an employer specifically intended to violate
> ERISA is the employee's lost opportunity to accrue additional benefits, the
> employee has not put forth evidence sufficient to separate that intent from
> the myriad of other possible reasons for which an employer might have
> discharged him.  This kind of deprivation occurs every time an ERISA
> employer discharges an employee and is not alone probative of an intent to

---

[3]Allegheny Ludlum's employee performance documentation gives credence to its legitimate non-discriminatory reasons for Scully's termination.  More than a year prior to his termination, Scully had exhibited inappropriate behavior, including slamming a meeting room door with such force that the door knob broke.  This behavior led to Scully being placed on probation.  In addition, Scully admitted during his deposition that during the years he and Moser held the same position, Moser received higher performance ratings.

interfere with pension rights. Accordingly, a prima facie case requires additional evidence suggesting that pension interference was a motivating factor.

*Id.* at 523. Scully has not produced evidence showing that Allegheny Ludlum terminated him for the purpose of interfering with his pension rights. And even if he had done so, thus making out a prima facie case, Allegheny Ludlum would be able to show legitimate reasons for terminating him. We have analyzed the legal significance of the facts relating to the ADEA claim, and the same analysis applies here, in the ERISA context.

## V.

For the reasons set forth above, we will affirm the District Court's grant of summary judgment in favor of Allegheny Ludlum and the individual defendants.