# United States Court of Appeals
## For the First Circuit

No. 05-2373

ROBUR OTERO CARRASQUILLO, MARIA T. NEGRON CEDEÑO
and the Conjugal Partnership formed between them AND
JENNIFER OTERO M. NEGRON,

Plaintiffs, Appellants,

v.

PHARMACIA CORPORATION; PFIZER PHARMACEUTICALS; ZAIDA
SANABRIA in her official and personal capacity;
COMPANIES X, Y, Z, JANE DOE AND JOHN DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch and Howard, Circuit Judges,
and Stafford,* Senior District Judge.

Vilma M. Dapena Rodríguez for appellants.
Carl Schuster, with whom Lourdes C. Hernández-Venegas, María
Santiago-Ramos and Schuster & Aquiló LLP were on brief, for
appellees.

October 6, 2006

---

*Of the Northern District of Florida, sitting by designation.

**HOWARD**, **Circuit Judge**.  Robur Otero Carrasquillo brought an action in the Puerto Rico District Court against his former employer, Pharmacia Corporation,[1] his former supervisor, Zaida Sanabria, and unnamed administrators and fiduciaries of Pharmacia's separation benefits plan.  At its core, the complaint alleges that Pharmacia violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and Article 1802 of the Puerto Rico Civil Code by improperly denying Otero severance benefits after he left his employment with the company.  The district court granted the defendants' motion for summary judgment, but assessed civil penalties against Pharmacia for failing to comply with ERISA's reporting and disclosure provision.  We affirm.

**I.**

Otero worked as a research associate for Pharmacia at its Arecibo, Puerto Rico, fermentation plant from the late 1980's until November 2001.  He was responsible for the fermentation of antibiotics.  In February 2000, Pharmacia notified its employees that, effective June 2001, the Arecibo plant would close, and the fermentation process would be relocated to an affiliate facility in Kalamazoo, Michigan.[2]  Because this relocation would result in the elimination of all jobs at the Arecibo plant, Pharmacia presented

---

[1]Pharmacia has since become a subsidiary of Pfizer, Inc.

[2]The facility at Kalamazoo was owned and operated by Pharmacia's parent company, Pharmacia & Upjohn.

adversely affected employees with two options: (1) apply, between April 2000 and December 2001, for the company's Separation Package Plan ("Plan"), a supplement to worker unemployment benefits, or (2) continue to work for the company in a different position. In the interim, regardless of election, employees would remain active in their current positions until their services were no longer needed or the Arecibo plant closed. At that time, those who had elected to remain with the company would be transferred to their newly assigned positions. For those who had elected to receive the separation benefits, the company would initiate an administrative process, designated the "Windows Exit Program," that would provide employees with 60 days to complete the necessary Plan paperwork.

During his last 18 months at Pharmacia, Otero was upset by several events that transpired at the plant. He alleges that Andres Lugo, the plant supervisor, incorrectly informed Otero that he could not apply for Plan benefits until the last fermentation of antibiotics had been completed, thereby inducing him to wait while other plant employees received job transfers or applied for separation benefits. Otero's repeated inquiries regarding his employment prospects were ignored or treated in a cursory manner. Receiving no prospective offers of employment, Otero eventually applied for various vacant positions with Pharmacia's remaining Puerto Rico branches, but these slots were given to more experienced applicants. Otero's difficulties were exacerbated in

-3-

March 2001, when defendant Sanabria replaced Lugo as the plant supervisor. She was more critical of Otero's work than his previous supervisors, and gave him only an "average" employee review, well below the "excellent" reviews he had customarily received. Finally, in August 2001, Pharmacia offered Otero a position as a microbiologist. Although Pharmacia considered it a lateral transfer, Otero perceived it as a demotion.

On November 5, 2001, Otero declined the microbiologist position and requested separation benefits. Linda Diaz, Pharmacia's Senior Director of Human Resources, immediately contacted the Plan administrator, who stated that Otero was no longer eligible to receive separation benefits. Although the Plan provided that terminated employees are generally eligible to receive such benefits, an exception existed for employees whose employment was discontinued due to a "transfer to an affiliated business," and who had been offered "a comparable position" within the company. Because Pharmacia interpreted the relocation of the fermentation process from Arecibo to Kalamazoo as a "transfer to an affiliated business," and Otero had been offered what it considered a "comparable position," the Plan administrator determined that Otero was not eligible to receive benefits.[3]

---

[3]Sanabria initially told Otero that he was too late to receive Plan benefits because the administrative window had closed. Otero argues that, because Linda Diaz failed to inform him of the "Windows Exit Program," the defendants breached their fiduciary duties under ERISA. See 29 U.S.C. § 1104. But, as the district

-4-

Immediately following the administrator's decision, Otero sought to personally deliver a letter to Pharmacia's Human Resources Manager, Carmen Calcano, to further inquire about his Plan eligibility and the basis for his denial. As he waited in Calcano's office, Otero suffered an emotional breakdown, collapsed to the floor, and injured his back. Because Otero required surgery and various other treatments for physical and psychological ailments, Otero qualified for the company's short-term disability program (under which he received 100% of his pre-disability salary), and ultimately, for the long-term disability program (under which he received upwards of 60% of his annual salary).

On July 5, 2002, Otero sent a letter to Pharmacia requesting information on a "Serious Health Condition" provision in the long-term disability plan, under which an injured employee could receive up to 100% of his annual salary. Receiving no response, Otero sent several additional letters requesting information and copies of the long-term disability plan. On August 29, 2002, 55 days after his initial inquiry, Pharmacia responded with the requested materials. Included was a copy of the Summary of Material Modifications, a document (previously circulated to all

court correctly recognized, although there was some initial confusion in response to Otero's request, the Windows Exit Program was nothing more than an administrative tool providing employees with notice of their termination date so that they would have time to prepare the necessary paperwork. It had no bearing on Pharmacia's substantive benefits decisions.

Pharmacia employees in 1999) that outlined all the changes that had been made to the long-term disability plan. The form explained that the Serious Health Condition provision had been excised from the Plan. Unsatisfied, Otero continued to send letters requesting information on the Serious Health Condition provision, to which Pharmacia consistently replied that all requests had been adequately fulfilled by its August 29th response.

In July 2003, Otero filed suit against Pharmacia, Sanabria, and unnamed Plan administrators and fiduciaries, claiming that Pharmacia's denial of benefits violated ERISA, that Pharmacia's failure to produce Plan documents within the time period designated by ERISA's reporting and disclosure provision warranted the imposition of civil penalties, and that the actions of Lugo, Sanabria and others amounted to intentional infliction of emotional distress and fraudulent inducement under Commonwealth law. The district court granted the defendants' motion for summary judgment, concluding that Pharmacia's decision was not arbitrary and capricious and that Otero's supplemental Commonwealth law claims were preempted by ERISA. The court, however, found that Pharmacia had violated ERISA's reporting and disclosure provision, and accordingly ordered Pharmacia to pay Otero $2500 in civil penalties.[4] Otero now appeals.

_____

[4]The district court also granted summary judgment for the defendants on Otero's additional claims of invasion of privacy and violation of ERISA's notice provision for failure to notify him of

**II.**

On appeal, Otero claims that Pharmacia's denial of his request for separation benefits was arbitrary and capricious, his supplemental state law claims are not preempted by ERISA, and the district court incorrectly calculated the civil penalties against Pharmacia.

**A.  The Benefits Decision**

We begin with Otero's challenge to Pharmacia's denial of Plan benefits.  It is undisputed that because the Plan reserved interpretative discretion to its administrators,[5] judicial review of Pharmacia's eligibility determination is limited to ascertaining whether the administrator's decision was arbitrary or capricious. Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002).  Thus, while we review summary judgment decisions de novo, Mattias-Correa

---

amendments to the long-term disability plan.  Otero has not appealed these rulings.

[5]The relevant provision of the Plan provides that:

> The company or its delegate will determine, in its or their sole discretion, the eligibility of each terminated Employee to participate in the Plan, the amount of Benefits to which a terminated Employee is entitled, and the manner and time of payment of the Benefits . . . . Any decisions, actions or interpretations to be made under the Plan by [Pharmacia] . . . shall be made in its respective sole discretion, not in any fiduciary capacity and need not be uniformly applied to similarly situated individuals and shall be final, binding and conclusive upon all parties.

v. Pfizer, Inc., 345 F.3d 7, 12 (1st Cir. 2003), where, as here, the underlying decision is subject to arbitrary and capricious review, we evaluate the district court's determination by asking "whether the aggregate evidence, viewed in a light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying a claim for benefits," Leahy, 315 F.3d at 18. In other words, the question here is whether the district court correctly concluded that Pharmacia's interpretation of the Plan's language, and its ultimate benefits determination based upon that interpretation, were reasonable. Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003).

Pharmacia had determined that, because Otero's research associate position had been eliminated due to a transfer of the job to an affiliated business, and because Otero was offered a comparable position as a microbiologist, he was not eligible to receive separation benefits. Otero argues that, according to the Plan, an employee whose job elimination results from a transfer to an affiliated business is only ineligible to receive benefits when the transfer is a product of the total or partial sale of the company. The eligibility provision that Otero cites provides, in relevant part, that:

> benefits under the Plan shall not be provided to any Employee [whose] employment termination is due to . . . (6) his or her transfer to an affiliate company or its transfer due to the

-8-

> total or partial sale of the Company, either
> by the sale of its stocks or assets in which
> the Employee is offered a "Similar Position."

(Emphasis added).  Since no sale precipitated the transfer of his job, Otero argues, this exception to benefits eligibility is inapplicable.

We disagree.  Otero's argument relies on an inoperative version of the Plan.  Otero's proffered language comes from a certified translation of a Spanish language document that had been circulated to employees at the Puerto Rico plant and was itself a translation of the original English language Plan.  But the Spanish language translation explicitly stated on its front page that any terminological discrepancy between it and the original English language version would be resolved in accordance with the terms of the original Plan, and that copies of the original English language Plan would be made available at Human Resources.  Thus, the original English language Plan is the controlling document. Because the original Plan does not require that the transfer of the job be "due to" a sale of the company for the ineligibility provision to be triggered, Otero's argument fails.[6]  Under the

---

[6]The eligibility provision of the original Plan provides:

> The Company shall grant Benefits to any
> Terminated Employee whose services are
> terminated by reason of Job Elimination . . .
> .  Notwithstanding anything herein to the
> contrary, a Terminated Employee will not
> [receive separation benefits] if his or her
> employment is discontinued due to [inter alia]

controlling Plan language, we see no basis to deem unreasonable Pharmacia's interpretation that an employee is ineligible to receive separation benefits when his job is eliminated due to _either_ a transfer to an affiliated business _or_ a total or partial sale of the company, and he is offered a comparable position with the company.[7]

Otero also argues that Pharmacia acted unreasonably by designating the move of the fermentation process from Arecibo to Kalamazoo as a "transfer to an affiliate business." In Otero's view, the move to the Kalamazoo facility could not be a "transfer" because that facility already operated a fermentation plant.

Where, as here, a term is not defined by the benefits plan, we give it "an ordinary and popular" reading "as would a [person] of average intelligence and experience." Richardson v.

---

. . . a transfer to an affiliated business, the sale of Pharmacia & Upjohn, Inc. or any portion thereof, either through a sale or exchange of stock or assets, or the outsourcing of a division, department, business unit or function where the employee has been offered a comparable position with the Company or the new employer.

[7]Additionally, there is a presumption that judicial review is limited to the evidentiary record presented to the administrator. See Liston, 330 F.3d at 23-24. Because the Plan administrator was located in the mainland United States, and the original English language Plan was the controlling version, we presume that it was the version that informed the administrator's decision. Otero has not presented any basis to believe otherwise, nor has he presented any argument for why we should consider the Spanish language version the controlling document.

Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 985 (9th Cir. 1997); Kolkowski v. Goodrich Corp., 448 F.3d 843, 850 (6th Cir. 2006); see also 29 U.S.C. § 1022 ("A summary plan description of any employee benefit plan . . . shall be written in a manner calculated to be understood by the average plan participant . . . ."). The term "transfer" is commonly defined as "to convey from one person, place, or situation to another." Merriam-Webster's Collegiate Dictionary 1249 (10th ed. 2001). That the Kalamazoo facility may have already maintained a fermentation plant is not by itself inconsistent with this definition. Otero has presented no evidence that Pharmacia failed to convey some level of capacity from Arecibo to Kalamazoo. Indeed, the record suggests that Pharmacia conveyed the function of the Arecibo plant to Kalamazoo to save on electricity costs. Accordingly, Pharmacia's interpretation was not unreasonable.

Finally, Otero argues that Pharmacia's denial of benefits was arbitrary and capricious because the positions of microbiologist and research associate are not "comparable." The Plan defines "Comparable Position" as:

> employment with the Company or a successor employer in which the individual's level of responsibilities is substantially similar, as determined by the Company, to the individual's immediately prior position with the Company, requiring similar skill levels and offering similar pay (within 10%) and in which the Employee is not asked to move his or her principal business location more than 50 miles.

-11-

Otero concedes that the positions pay identical salaries, are performed within the same principal business location, and require the same educational background and basic skill levels. Nevertheless, he contends that the level of responsibilities of a microbiologist are not "substantially similar" to those of a research associate. Otero argues that a microbiologist has less substantial supervisory responsibilities, is not on call 24 hours a day, and has no office, cellular phone or beeper. The district court was unpersuaded, finding that the positions were comparable because Otero's qualifications fulfilled the requirements of both jobs.

While the positions' respective levels of responsibility are not identical, the Plan only requires that they be "substantially similar as determined by the Company." Employing the company's traditional methodology for comparing two positions, Pharmacia found that, based on job descriptions, job requirements, salary, educational requirements and banding (the company's general method for systematizing position responsibilities), the positions of research associate and microbiologist were in fact comparable.

Otero states that as a microbiologist he would no longer be "producing millions in money for [the company]" as he had before, and that he would no longer be responsible for highly valuable company products and equipment. Statements at this level of abstraction, however, do not establish that the administrator's

decision was arbitrary.  See Liston, 330 F.3d at 25 (holding that the appellant's claim that she was "no longer responsible for developing and implementing growth and service strategies as well as piloting new work processes" was too abstract to stand as proof of "diminished responsibility" under the company's employee benefits plan, and therefore was not enough to make the company's denial of benefits arbitrary and capricious).  Nor do Otero's more concrete arguments -- that the microbiologist is not on call, and has no office, cellular phone or beeper -- suffice to negate the otherwise substantially similar level of responsibilities, benefits and qualifications of the positions.  In light of the broad interpretive discretion that Pharmacia reserved to itself, see supra note 5, we cannot say that its determination was arbitrary and capricious.

## B.  Preemption

We next turn to the district court's finding that Otero's state law claims are preempted by ERISA, 29 U.S.C. § 1144(a).  In light of ERISA's goal to promote uniformity in the nationwide regulation of employee benefit plans, Congress designed the statute to supersede "any and all State [causes of action] insofar as they may now or hereafter relate to any employee benefit plan."  Id. (emphasis added).  The Supreme Court has identified two instances where a state cause of action relates to an employee benefit plan: where the cause of action requires "the court's inquiry [to] be

-13-

directed to the plan," or where it conflicts directly with ERISA. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140-42 (1990). Because the resolution of Otero's Commonwealth law claims for fraudulent inducement and intentional infliction of emotional distress would require analysis of the Plan, the district court correctly concluded that they are preempted.

In his complaint, Otero alleges that Pharmacia fraudulently induced him to continue his employment at the Arecibo plant by incorrectly informing him that he could not apply for severance benefits until all fermentation at Arecibo was completed, changing the benefits application deadline without informing him, and falsely promising him a comparable position at the company whenever he expressed concern for his job security. To determine whether these acts constitute fraudulent inducement, the district court would have to consult the severance plan to identify the application dates and the administrative process for determining and informing the employees of such dates. Additionally, to determine whether Pharmacia's promises of comparable employment were fraudulent, the court would have to consult the Plan to determine whether the offered microbiologist position was "comparable" to his prior job as a research associate. Because the court's inquiry would necessarily "be directed to the Plan," the court was correct to dismiss the fraudulent inducement claims. See Carlo v. Reed Rolled Threat Die Co., 49 F.3d 790, 794 (1st Cir.

-14-

1995) (holding that plaintiff's misrepresentation claim was preempted by ERISA because the computation of damages would require reference to the severance plan).

Otero's claim for intentional infliction of emotional distress is similarly unavailing. The factual basis supporting his emotional distress claim is simply a reiteration of the facts supporting his fraudulent inducement claims. Thus, "because the emotional distress claim obviously piggybacks on the facts underlying the [fraudulent inducement] claim, which [is] preempted, the emotional distress claim, too, is preempted." Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 7 n.9 (1st Cir. 1999).

## C.  Civil Penalties

Finally, Otero appeals the district court's method for calculating the civil penalties owed by Pharmacia for violating ERISA's reporting and disclosure provision. See 29 U.S.C. § 1132(c) (providing that any administrator who fails, within 30 days, "to comply with a request for any information which such administrator is required" to furnish, "may in the court's discretion be personally liable . . . in the amount of up to $100 a day from the date of such failure"). Finding that Pharmacia provided all the necessary materials 55 days after Otero's July 5th inquiry, the district court determined that Pharmacia's reply was 25 days late. See id. By assessing the maximum discretionary penalty of $100 a day, the court calculated an award of $2500 in

civil penalties.  We review the court's determination for abuse of discretion.  <u>Sullivan</u> v. <u>Raytheon Co.</u>, 262 F.3d 41, 52 (1st Cir. 2001).

Otero has presented nothing that causes us to question the district court's calculation.  He argues that neither Pharmacia's August 29th response nor any of its subsequent correspondence contained information regarding the "Serious Health Condition" provision about which he requested information.  But Pharmacia's August 29th correspondence fully explained that the "Serious Health Condition" provision was no longer in effect. Pharmacia was not obligated to provide any further explanation regarding an inactive provision.  <u>See</u> <u>Shields</u> v. <u>Local 705, Intern. Broth. of Teamsters Pension Plan</u>, 188 F.3d 895, 903 (7th Cir. 1999).

## III.

For the foregoing reasons, the judgment of the district court is **<u>affirmed</u>**.