

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-27-2008

# Mallon v. Trust Co NJ

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1087

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Mallon v. Trust Co NJ" (2008). *2008 Decisions.* Paper 968.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/968

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1087
_____

SANFORD MALLON; NICHOLAS COTTER;
JAMES OUTWATER; GERALD JACOB; DAVID A. TEPPER,

Appellants

v.

TRUST COMPANY OF NEW JERSEY SEVERANCE PAY PLAN; PLAN
ADMINISTRATOR OF THE TRUST COMPANY OF NEW JERSEY SEVERANCE
PAY PLAN; NORTH FORK BANK
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cv-03666)
District Court Judge: Honorable Harold A. Ackerman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 24, 2008
Before: SLOVITER, BARRY and NYGAARD, Circuit Judges

(filed: June 27, 2008  )
_____

OPINION
_____

PER CURIAM

Appellants challenge the district court's order granting appellees' motion for

judgment on the pleadings and denying appellants' cross-motion for summary judgment.

For the reasons that follow, we will affirm.

I.

We adopt the district court's recitation of the facts put forth as follows:

> On or about January 7, 2003, in anticipation of its merger with [appellee] North Fork Bank ("North Fork"), Trust Company of New Jersey ("TCNJ") adopted the Trust Company of New Jersey Severance Pay Plan (the "Plan"). The parties agree that the Plan constitutes an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.* [Appellants] Sanford Mallon, Nicholas Cotter, James Outwater, Gerald Jacob, and David Tepper were employees of TCNJ. On May 14, 2004, North Fork completed its acquisition of TCNJ. North Fork offered employment to all [appellants], and they became employees of North Fork as of May 14, 2004.

> [Appellants] contend that the conditions of their employment changed substantially and detrimentally post-merger. For example, [appellant] Mallon claims he was demoted from Senior Vice-President to Regional Vice-President, and the other [appellants] claim they were demoted from Regional Sales Managers to Account Executives. [Appellants] also allege that their managerial and supervisory duties were significantly reduced. [Appellants] worked in residential mortgage lending, and they claim that North Fork decided to [de]emphasize that line of business. Consequently, according to [appellants], their commissions declined as well. [Appellants] claim that their compensation was largely determined by commissions, so they argue that this reduction in business had a serious effect. [Appellees] dispute these contentions, especially with regard to [appellants'] duties and the reduction in their earned commissions.

> In July and August 2004, each [appellant] notified North Fork that they deemed themselves constructively discharged because, in their view, North Fork detrimentally changed their "duties, responsibilities, job title[s] and compensation" such that the changes were "tantamount to termination." One day after each [appellant] gave notice of constructive discharge, each [appellant] filed a claim for severance benefits under the Plan. Each [appellant] subsequently received a letter dated November 4, 2004[,] from the Plan Administrator denying each [appellant's] severance claim because each [appellant's] employment was not "involuntarily terminated as

2

required by the Severance Pay Plan as a condition of eligibility for benefits." The Plan Administrator issued an amended notice of denial to each [appellant] on December 10, 2004. This amended notice, which cancelled and superceded the initial November 4 notice, elaborated upon the reasons for denial. Each amended notice of denial stated that each [appellant's] claim was denied because employment was not involuntarily terminated and because, "assuming that [] employment was involuntarily terminated as required, nevertheless [the] claim for benefits is excessive due to the fact that [] base pay is incorrectly computed as [] compensation was not entirely base pay."

All [appellants] filed a timely administrative appeal of the denial and submitted additional documentation in support of the appeal. By letter to each [appellant] dated July 11, 2005, the Plan Administrator denied each appeal.[1]

---

[1] In each letter, the Plan Administrator stated:

a)  that the respective claimants "tendered [their] resignation, which is not a qualifying event;"

b)  that the "Plan does not recognize 'constructive discharge' as a qualifying event;"

c)  that "[a]ssuming, arguendo, that such an event were qualifying, no constructive termination occurred;" because "at the time of the merger [they] accepted and worked for a substantial period of time in a position of comparable employment, as defined by the Severance Plan;"

d)  that the claims were excessive because they were "based on compensation other than annualized base salary;"

e)  that "[c]ommissions are not to be considered in computing base salary under Severance Plan Section 2.7, as they constitute a form of 'overtime, bonuses, special premium and allowances,'" and

f)  that the claims were excessive because each claimant was "not an officer," "provided no evidence that [they] were an officer," and that TCNJ and North Fork records, including those provided by the claimants, "confirm

3

On July 22, 2005, appellants filed a complaint in the United States District Court for the District of New Jersey against The Trust Company of New Jersey Severance Pay Plan, The Plan Administrator of the Trust Company of New Jersey Severance Plan, and North Fork Bank alleging the wrongful denial of severance benefits under the Plan in violation of ERISA. Appellees moved for judgment on the pleadings while appellants filed a motion for summary judgment. On December 12, 2006, the district court granted appellees' motion and denied appellants' motion.

## II.

The district court had subject matter jurisdiction over this case under 28 U.S.C. § 1331 because it arose under ERISA. We have appellate jurisdiction under 28 U.S.C. § 1291 over the final judgment of the district court. We exercise plenary review of the dismissal of a complaint under Federal Rule of Civil Procedure 12(c). See Leamer v. Fauver, 288 F.3d 532, 535 (3d Cir. 2002); see also Green v. Fund Asset Mgmt., 245 F.3d 214, 220 (3d Cir. 2001). As with a Rule 12(b)(6) motion, we must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party." Green, 245 F.3d at 220. When reviewing a denial of summary judgment, our scope of review is also plenary. In both cases, we apply the same test as the district court should have applied initially. See Dewitt v. Penn-Del Directory

that [they] were not [] officer[s]."

4

Corp., 106 F.3d 514, 519 n.4 (3d Cir. 1997).

III.

**A.      Standard of Review**

Appellants first argue that the district court erred in reviewing the Plan

Administrator's decision too deferentially.  In <u>Firestone Tire & Rubber Company v.</u>

<u>Bruch</u>, 489 U.S. 101, 115 (1989), the Supreme Court instructed that, under ERISA §

502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), "if a benefit plan gives discretion to an

administrator or fiduciary who is operating under a conflict of interest, that conflict must

be weighed as a factor in determining whether there is an abuse of discretion."[2] (citation

and internal quotation marks and brackets omitted); <u>see also</u> <u>Noorily v. Thomas & Betts</u>

<u>Corp.</u>, 188 F.3d 153, 159 (3d Cir. 1999).  Based upon that instruction, in <u>Pinto v. Reliance</u>

<u>Standard Life Insurance</u>, 214 F.3d 377, 392-93 (3d Cir. 2000), we adopted a sliding scale

approach to cases involving an apparent conflict of interest, "calibrating the intensity of

our [arbitrary and capricious] review to the intensity of the conflict."  For example, we

have held that when an employer is directly funding a portion of a plan and would thereby

stand to benefit financially from the denial of a current employee's claim, a "somewhat

---

[2]   The Plan here grants the Plan Administrator discretion over determining eligibility for benefits.  Section 4.1 of the Plan, titled " The Plan Administrator," states that "[t]he Plan Administrator shall administer this Plan, and furnish all notices and do all filings, according to law, and shall have the power, in its sole discretion, to implement, operate and interpret this Plan, to determine all questions relating to eligibility for benefits under the Plan, and, further, to take such other action as the Plan Administrator deems equitable under the circumstance in light of the purpose of this Plan."

5

heightened" standard of review applies. See Smathers v. Multi-Tool, Inc./Multi--Plastics, Inc. Employee Health and Welfare Plan, 298 F.3d 191, 199 (3d Cir. 2002). Such a case presents a conflict of interest that, although not extraordinary, warrants a "more penetrating review of [an] administrator's decisionmaking process."[3] Id.

The district court plainly stated that it was applying a slightly heightened standard of review in line with the requirements of cases such as Firestone and Pinto. In arriving at this conclusion, the district court properly took into account all relevant factors that—potentially—could have heightened its scrutiny even further. For instance, the district court noted that the Plan was funded out of North Fork's operating funds and that the appellants were former, not current, employees of North Fork. But, as the district court also noted, there was no evidence to support assertions of procedural anomalies in the Plan Administrator's decisions that would have placed this case at the least deferential end of the range of review. Cf. Pinto, 214 F.3d at 394. Importantly, each of the appellants was treated in a like fashion under the Plan Administrator's interpretation. Given the facts presented here, we find that the standard of review adopted by the district

---

[3] In applying the sliding scale approach, a court may also take into account the sophistication of the parties, the information accessible to the parties, and the particular financial arrangement involved. See Pinto, 214 F.3d at 392. It is also relevant whether the claimant seeking benefits was then the fiduciary's employee, as to whom there are conflict-mitigating factors such as loss of morale and higher wage demands, or a former employee, as to whom those mitigating factors are not present. See Kosiba v. Merck & Co., 384 F.3d 58, 65 (3d Cir. 2004). Finally, "demonstrated procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits" warrants a heightened standard of review. Id. at 66.

6

court sufficiently accounted for the Plan Administrator's potential conflicts of interest; thus, the degree of the scrutiny matched the degree of the conflict presented. See Pinto, 214 F.3d at 392 ("We think the best way to 'consider' these potentially relevant factors (in this case, the structural conflict of interest) is to use them to heighten our degree of scrutiny, without actually shifting the burden away from the plaintiff").

## B.    Plan Administrator's Decision

Appellants further argue that the Plan Administrator erred in construing the Plan in such a way that appellants were denied eligibility for severance benefits due to their resignations. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), gives a participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[4] In reviewing the decision of a Plan Administrator, we consider the following factors: "(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan

---

[4] As the district court noted, appellants failed to assert that North Fork had forced them to resign due to an improper motive in violation of ERISA § 510, 29 U.S.C. § 1140. Thus, our review is confined to whether the Plan Administrator violated the terms of the Plan itself. See Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 176 (3d Cir. 1997) (addressing a constructive discharge claim under the auspices of ERISA § 510 which provides for an "'objective standard,' which asks whether the employer 'created conditions so intolerable that a reasonable person would resign'"); see also Berger v. Edgewater Steel Co., 911 F.2d 911, 923 (3d Cir. 1990) (construing the term's application under ERISA § 510). We note that our review of the record suggests that, if we were to reach the question, appellants would have failed to meet this constructive discharge standard.

7

meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan." Moench v. Robertson, 62 F.3d 553, 566 (3d Cir. 1995); see also Dewitt, 106 F.3d at 520.

We begin with the "words of the Plan." Bollman Hat Co. v. Root, 112 F.3d 113, 116 (3d Cir. 1997). In pertinent part, the Plan provides the following:

> **3.1 Eligibility for Severance.** Subject to Section 3.2, an Employee whose employment is involuntarily terminated by the Company because of permanent layoff, termination other than for Cause (as defined below), termination for economic reasons, reduction-in-force, facility closing, reorganization or consolidation, shall be eligible for severance pay determined in accordance with Section 3.3; provided, however, that an Employee, who is offered employment by the Company that is comparable to such Employee's then current position but who refuses such comparable employment, shall not be eligible to receive severance pay under this Plan. For purposes of the foregoing, an offer of employment shall be deemed to be "comparable" if it is for a position that is similar to the Employee's then current position, provides for an annual base salary at least equal to the Employee's then current base salary and is located within the State of New Jersey no more than twenty-five (25) miles from the location of the Employee's then current position.[5]

---

[5] Granting appellees' motion for judgment, the district court made the following conclusions concerning the reasonableness of the Plan Administrator's interpretation:

> The provision in Section 3.1 of the Plan precluding eligibility for otherwise eligible employees who refuse an offer of comparable employment is not rendered meaningless or internally inconsistent by the Plan Administrator's reading of the Plan. The Plan dictates that an eligible employee becomes ineligible for severance benefits if he or she declines an offer of comparable employment. However, as [appellees] argue, this

8

We agree substantially with the district court's opinion. Here, the Plan Administrator's interpretation was reasonable as it neither rendered any of the Plan's language meaningless or inconsistent nor did it conflict with the plain language of the Plan. As the district court noted, the Plan Administrator's determination that the Plan does not recognize constructive discharge as a qualifying event was not arbitrary or capricious, even under a heightened standard. Under the terms of the Plan, the Plan Administrator determined that appellants' voluntary resignation precluded them from falling under the terms of § 3.1 because the Plan provides severance benefits to an employee who "is terminated on or after the Effective Date." The bulk of appellants' argument, in fact, is belied by the purpose of the Plan to for "involuntary termina[tion] *by*

provision does not necessarily mean that an otherwise *ineligible* employee—ineligible because the employee tendered his resignation—becomes eligible if he or she *fails* to receive an offer of comparable employment. The Plan only requires consideration of comparable employment where an employee refused a position with North Fork, and does not directly contemplate consideration, as [appellants] urge, of whether an *accepted* offer constitutes comparable employment.

\* \* \*

This Court could imagine an interpretation of the Plan that would allow eligibility for constructive discharge, and might indeed have made such an interpretation if it were considering the Plan language as a matter of first impression . . . Even considering the slightly heightened review applicable here and the more penetrating inquiry it requires, the Plan Administrator's interpretation meets the standard outlined by our Circuit in Dewitt and other cases. This Court concludes that the Plan Administrator's interpretation of the Plan to preclude severance benefits eligibility for constructive discharge was not arbitrary and capricious.

9

*the Company.*"[6] This interpretation was reasonable. See generally Frank v. Colt Indus., Inc., 910 F.2d 90, 101 (3d Cir. 1990) (determining that since requirement for eligibility for benefits was termination, and employees voluntarily resigned before they were actually terminated, employees could not be deemed "effectively terminated" and thus eligible for severance benefits). Further, no Plan participant reading such language would have been led to believe differently.

Generally, the interpretation of a severance plan is a fact-specific inquiry in which precedent provides us little guidance. Significantly, however, the Plan here, unlike severance plans in other cases construing instances of constructive discharge by an employer, does not provide for termination *by an employee* due to a significant reduction in duties or other deleterious circumstance. Cf. Smith v. United Television, Inc. Special Severance Plan, 474 F.3d 1033, 1035 (8th Cir. 2007) (determining whether resignation was for "Good Reason" where plan provided for severance due to "reduction in salary or bonus opportunity"); Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 458-459 (6th Cir. 2003) (determining whether actual termination was a condition precedent to establishing a qualifying termination under a benefits plan recognizing qualifying terminations by the employee because, among other reasons, the company significantly

---

[6] Involuntary termination under the Plan occurs for one of six specific reasons. One of these six reasons is "other than for Cause" which could fairly encompass a great deal of situations. The Plan Administrator's interpretation, however, renders this term neither meaningless nor without content.

10

reduced the employee's duties); Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 827-28 (7th Cir. 2004) (examining whether job alterations amounted to a reduction in scope of position where severance plan covered "termination by the Participant for Good Reason").  We have no authority here to redraft the Plan in an effort to blunt the import of its language excluding such a provision.  It would also strain the confines of our review here to hold that the Plan Administrator abused its discretion by emphasizing the Plan's requirement that a covered termination be "by the Company."

In addition, appellants had no claim for severance benefits based on "comparable employment," or a lack thereof, beyond what was provided for in the Plan.  "ERISA requires 'that any contractually accrued rights be discernible from the written terms of the formal ERISA plan documents themselves.'"  Hooven v. Exxon Mobil Corp., 465 F.3d 566, 573 (3d Cir. 2006) (quoting Carr v. First Nationwide Bank, 816 F. Supp. 1476, 1490 (N.D.Cal.1993)); see also 29 U.S.C. § 1132(a)(1)(B).  "Although we occasionally employ unilateral contract concepts in ERISA cases, we do so only where 'the asserted unilateral contract is based on the explicit promises in the ERISA plan documents themselves.'"  Id. at 573 (quoting Carr, 816 F. Supp. at 1490-91).  As the district court noted, the Plan requires consideration of "comparable employment" *only* where an employee *declines* an offer of continued employment with North Fork.

Thus, under the terms of the Plan, appellants could have claimed benefits for involuntary termination if they declined an offer that they deemed not comparable and

then filed suit. Appellants, however, would have had to refuse employment with North Fork in order for the courts to question whether the actual offer with Northfork was, under the terms of the Plan, comparable to their current positions. Cf. Otero Carrasquillo v. Pharmacia Corp., 466 F.3d 13, 16 (1st Cir. 2006) (assessing whether a rejected offer of employment was for a "comparable position"); Youchum v. Barnett Banks, Inc. Severance Pay Plan, 234 F.3d 541, 545-47 (11th Cir. 2000) (determining whether a *rejected* written offer of employment was "comparable employment" under the terms of a severance plan). It was thus reasonable for the Plan Administrator to conclude that appellants, upon acceptance of their positions with North Fork, relinquished all of their rights to "comparable positions" under the Plan even though they later became dissatisfied with their new work at North Fork. By accepting the offers of new positions, appellants excluded themselves from a potential class of beneficiaries who were involuntarily terminated and then refused offers of comparable subsequent positions with North Fork. Such a class of employees would no doubt have been eligible to put forth "comparable employment" claims under the plan. Cf. Otero Carrasquillo, 466 F.3d at 16.

IV.

As the district court noted, one might disagree with the Plan Administrator's interpretation of the Plan. The Plan Administrator's decision to deny appellants severance benefits in light of its interpretation of "involuntary termination," however, was not arbitrary or capricious. Even under a heightened standard of review, our task is not to

12

substitute our view for that of the Plan Administrator.  Thus, we find no error on the part of the district court and will affirm.