# United States Court of Appeals
## For the First Circuit

No. 24-1905

LORNA ORABONA,

Plaintiff, Appellant,

v.

SANTANDER BANK, N.A.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Gelpí, Lynch, and Thompson,
Circuit Judges.

Jennifer L. Sylvia, with whom Moses Ryan Ltd. was on brief, for appellant.

Leslie D. Parker, with whom Brenna Anatone Force, Brendan F. Ryan, and Adler Pollock & Sheehan P.C. were on brief, for appellee.

June 16, 2025

**LYNCH**, **Circuit Judge**.  Santander Bank, N.A. terminated Lorna Orabona's employment as a high-earning mortgage development officer for cause, notifying her that she had violated the company's Code of Conduct client privacy policy.  In consequence, she was not eligible for severance benefits under its Employee Retirement Income Security Act (ERISA) Severance Policy.  Orabona did not employ the administrative procedure under the ERISA Severance Policy.  Rather, she sued under state law in multiple counts sounding in both tort and contract.  She alleged that Santander had terminated her employment to avoid paying her severance benefits under the Policy.  After discovery, the district court entered summary judgment for Santander on the grounds that Orabona's claims were expressly preempted by ERISA section 514(a), 29 U.S.C. § 1144(a).

We reject Orabona's arguments on appeal and hold that her claims are preempted by ERISA, because all of her claims "relate to" the Severance Policy as the court must refer to that Policy to determine both liability and damages as to each claim, see 29 U.S.C. § 1144(a), and, as to her claims seeking relief for the denial of severance benefits, they "conflict[] with the remedial scheme established by 29 U.S.C. § 1132(a)."  See Cannon v. Blue Cross and Blue Shield of Mass., Inc., 132 F.4th 86, 88 (1st Cir. 2025).

On review of a grant of summary judgment, we recite the facts in the light most favorable to the nonmoving party, "indulging all reasonable inferences in [Orabona's] favor, but paying no heed to conclusory allegations, improbable inferences, [or] unsupported speculation." Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 7 (1st Cir. 2025) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (internal quotation marks omitted)). We draw the facts "from the record and discovery as to [the Severance Policy]." Cannon, 132 F.4th at 88. The summary judgment record includes Orabona's unverified complaint; Orabona's supporting affidavit; the deposition of Santander's 30(b)(6) witness Michael Pagano, head of Employment Relations; and an affidavit by Santander's counsel, attaching the Santander US Enterprise Severance Policy effective July 21, 2021 through July 17, 2022 (the "Severance Policy"), Forms 5500 for the Severance Policy for the years 2020 through 2022,[1] a December 9, 2021 email from Santander HR to Orabona which included a link to a summary of the 2020 Form 5500 for the Severance Policy, and the Santander US Code of Conduct as of December 16, 2021. There is no

---

[1] Form 5500 is an informational return used "to satisfy annual reporting requirements under Title I and Title IV of ERISA and under the Internal Revenue Code." U.S. Dep't of Lab., Form 5500 Series, https://perma.cc/J925-V6ZD.

dispute as to the authenticity of Santander's Severance Policy and Forms, Code of Conduct, and the December 9, 2021 email.[2]

## A. The Termination of Orabona's Employment

Orabona's complaint states that the lawsuit "arises out of the wrongful, unlawful actions by [Santander] in interfering with and preventing [her] from continuing in her employment and receiving her entitlement to employee benefits."

Orabona was hired by Sovereign Bank in 2008 as a Mortgage Development Officer (MDO), and Santander became Orabona's employer when it acquired Sovereign in 2013. She was "one of the top five MDO performers in the country for Santander overall," and her wages, which were based only on commission, were $525,000 in 2020 and $680,000 in 2021.

On or about January 18, 2022, Orabona told her supervisor at Santander that she had an offer of employment from Citizens Bank, "but she was still considering staying at Santander and wanted to re-negotiate her salary." Her supervisor responded that "he wanted [her to] stay and . . . would talk to his supervisors and get back to her to work something out."

---

[2] Though Orabona disputed the authenticity of and moved to strike Santander's December 9, 2021 email before the district court, the court denied her motion to strike, and Orabona did not appeal that denial, so we consider the email to be unrefuted evidence.

On January 21, 2022, a Santander employee from Spain who "was not [Orabona's] supervisor" and did not "even work[] in her department," joined by a Santander HR employee and a Santander IT employee, called Orabona and informed her that her employment was terminated effective immediately, for cause, because she had forwarded company emails from her company email address to her private email address.[3] Orabona's affidavit states that:

> [The Santander employee] advised me that I was terminated for cause and all of my benefits, including my healthcare, were ceasing immediately. I was also advised that if I took any further actions, such as appealing my termination or applying for benefits, Santander would report to the Nationwide Multistate Licensing System ("NMLS") that I had committed misconduct thereby attempting to get my license revoked.

Santander's 30(b)(6) witness testified that "[u]sually the manager . . . communicat[es] that the employee is being terminated," and a member of the Employment Relations team, which is entirely based in the United States, "support[s] that communication, answer[s] any questions the employee may have, and provide[s] an overview of what they can expect from a benefits standpoint after their departure."

---

[3] Orabona's affidavit states that she "did not accept the offer and/or start employment with Citizens Bank until January 24, 2022, after [her] termination from Santander," but Santander contests this, noting that "according to Orabona's registration on the Nationwide Multistate Licensing System ("NMLS"), Orabona began employment as a Citizens employee on . . . January 18, 2022." Our disposition does not turn on this dispute.

Orabona says she received no warning or initial reprimand prior to the termination of her employment. She says that she had only forwarded company emails "due to working remotely during the state of emergencies for the COVID-19 pandemic since March 2020," that all company emails she had forwarded were "encrypted and did not contain any personal information," and that "[o]ther Santander employees had [also] been forwarding company emails to their private email due to working remotely" but "were not reprimanded or terminated." Orabona says that the forwarded company emails were mortgage pre-approval letters for client referrals, and she does not deny that they contained confidential client and Santander business information.

"Around the latter part of the fourth quarter of 2021 and prior to [her] termination," Santander decided to completely exit the U.S. residential mortgage market, which "would lead to the layoffs of all MDOs in the residential mortgages department, which was Orabona's department." "On or about February 1, 2022 (only a few days after Orabona was terminated), Santander officially announced the massive national layoff in its residential lending department," which terminated all MDOs in Orabona's department and eliminated her position.

Orabona says the reasons Santander gave for terminating her employment were pretextual and that the timing of her January 21, 2022 termination was pretextual because that timing

- 6 -

was meant to render her ineligible for severance benefits under the February 1, 2022 announcement. Santander HR had emailed Orabona a summary of the Form 5500 for the 2020 Severance Policy on December 9, 2021, prior to her termination.[4]

Orabona concedes she "took no steps to appeal [her] termination or apply for any benefits." Her affidavit attributes her failure to appeal to her reliance on the alleged statements made by the Santander employee during the January 21, 2022 termination call that Orabona was ineligible for benefits and that Santander would report her to the licensing board if she took further actions, such as appealing her termination or applying for benefits. Santander's 30(b)(6) witness testified that "any employee" may "file a claim to HR asking for severance benefits," including an employee who was "terminated for cause but believe[d] they[] [were] still . . . entitled to severance."

The gravamen of Orabona's lawsuit is that "a possible severance payout to [her would have been] significant" and so "Santander fraudulently advised [her] she was terminated for cause

---

[4] Orabona says that she did not receive a separation guide upon her termination and that normally Santander would send terminated employees such a guide, but it is unclear from Santander's 30(b)(6) witness whether that practice is customary for employees terminated for cause. Santander's 30(b)(6) witness testified that the separation guide did not contain "anything . . . referencing at all the [S]everance [P]olicy" but rather included information such as about COBRA benefits and how to convert a life insurance policy. In any event, the preemption issue is unaffected by this.

- 7 -

and concealed the planned large-scal[e] layoff to deprive her of any eligibility of benefits, including but not limited to, severance." These allegations reference the Severance Policy, to which we now turn.

**B. The ERISA Severance Policy**

The ERISA Severance Policy states the terms of employee eligibility and calculation of severance benefits, reserves discretion to Santander, and sets forth appeals rights.[5] It provides, inter alia, that:

1. "It is the current policy of [Santander] to provide severance benefits to full or part time Employees whose positions are involuntarily terminated . . . as a result of" certain events, relevantly including "[a] workforce reduction or position elimination."

2. "Employees are not entitled to any severance benefits if their employment is terminated for any of" a number of non-exhaustive reasons, relevantly including "[m]isconduct or violation of company policies, procedures, practices, or the Code of Conduct." The Code of Conduct contains policies regarding employee use of corporate assets and provides that employees "shall . . . [n]ot

---

[5] A separate "Benefits and Payroll Guide for Employees Eligible for Benefits under the [Severance Policy]" "highlight[s] key provisions of Santander's benefit plans and programs," such as COBRA coverage and participation in the 401(k) plan, for eligible employees.

- 8 -

send, forward or transmit Santander US . . . information to [their] personal email account, personal messaging application, or similar platform for any reason." The Code states that "Employees who violate the Code will be subject to disciplinary action, up to and including termination of employment" and that "[i]n general, employment at Santander US . . . is expressly 'at-will' and may be terminated at any time by Santander US . . . with or without cause and with or without notice."

3. Once an employee has been found eligible and qualified for benefits, receipt of severance benefits is contingent on, inter alia, the execution of a Separation Agreement and "the Employee remaining in his/her position through the Employee's Termination Date." "If the Employee . . . resigns employment with Santander US prior to the Termination Date, no severance benefits will be provided."

4. "For Employees earning commissions, the Severance Pay amount shall be based on the greater of: (1) Benefits Pay utilized to determine the salary-related benefits for the year in which the Employee's Termination Date occurs, or (2) the most recent 6 to 24 months (based on time in commissioned role) of average, annualized earnings as of the Employee's Termination Date." For employees whose severance pay is calculated based on (2) and who have average, annualized earnings totaling more than $100,000 or

$300,000, severance pay is based on only 80% or 65% of those earnings, respectively.

5. Santander determines "in its sole discretion . . . whether any employee or employees will be provided severance benefits; the terms and conditions for payment of such severance, and whether such terms and conditions have been satisfied; and the amount of severance pay and its application in the particular case."

The Severance Policy further provides that "[a]ll claims for benefits . . . shall be made in writing to[ ]HR within sixty (60) days of the alleged occurrence giving rise to the claim" and an employee may appeal a claim denial "by submitting a written request for review within sixty (60) days after the date on which such denial is received."  "An employee must exhaust the claims and appeal process before filing suit."

## C. The District Court Proceedings

On June 22, 2023, Orabona sued Santander in Rhode Island Superior Court.  Santander removed the case to federal court and filed a motion to dismiss all claims for failure to state a claim and on ERISA preemption grounds, attaching as an exhibit a version of the Severance Policy.  Orabona opposed, disputing the "authenticity and accuracy" of Santander's attached Severance Policy[6] and requesting "discovery to inquire more into the

---

[6]    The version of the Severance Policy Santander attached to its motion to dismiss had last been approved on July 18, 2022,

- 10 -

applicable terms of the [Policy] and to properly determine whether this [Policy] is truly one that would be considered an ERISA plan." The district court denied without prejudice Santander's motion to dismiss and granted both parties "limited discovery into the applicability and/or authenticity of the potential ERISA plan presented by the defendant in support of its Motion to Dismiss."

After discovery was complete, Orabona filed an amended complaint alleging claims, all under state law, of breach of implied contract and covenant of good faith and fair dealing, wrongful termination, fraud and intentional misrepresentation, and negligent misrepresentation, seeking for each claim "damages to be proven at trial, plus reasonable attorney's fees and costs, punitive damages, and all such other relief this Court deems just and proper." Santander filed a motion to dismiss the amended complaint for failure to state a claim and for summary judgment based on ERISA preemption, arguing that "ERISA preempts Plaintiffs' claims because each of her counts 'relates to' the [ERISA] Plan as the Court would need to refer to [the] Plan to determine liability and damages."

On September 25, 2024, the district court issued a Memorandum and Order granting Santander's motion for summary

---

and Orabona contested its authenticity on the grounds that she "was terminated on January 21, 2022, months prior to [its] adoption."

judgment on ERISA preemption grounds.  The court held that all of Orabona's claims were preempted under 29 U.S.C. § 1144(a).  As to the fraud and negligent misrepresentation claims, the court held they were preempted because "[t]he damages that naturally flow from these claims would be the value of [the severance] benefits, as detailed by the [Severance Policy]," citing, inter alia, Otero Carrasquillo v. Pharmacia Corp., 466 F.3d 13 (1st Cir. 2006).  As to the contract and wrongful termination claims, Orabona had conceded that severance benefits would "be a portion of consequential damages of those claims," and so the court held that "a calculation of [her] damages would require reference to the [Severance Policy]."

## II.

We review the district court's grant of summary judgment de novo and "affirm[] the grant if the record 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'"  Cannon, 132 F.4th at 89 (quoting Mullane v. U.S. Dep't of Just., 113 F.4th 123, 130 (1st Cir. 2024)).

All of Orabona's claims are statutorily preempted under section 514(a) of ERISA, which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any" ERISA plan.  See 29 U.S.C. § 1144(a).  "The term 'State law' includes all laws, decisions, rules, regulations, or other

- 12 -

State action having the effect of law." 29 U.S.C. § 1144(c)(1). "[A] state law relates to an ERISA plan if it has a connection with or reference to such a plan." Rutledge v. Pharm. Care Mgmt. Ass'n, 592 U.S. 80, 86 (2020) (alteration in original) (quoting Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001)). This test is satisfied if "the court's inquiry must be directed to the [ERISA] plan." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990); see also Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 52 (1st Cir. 2000)("We have consistently held that a cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action."). In determining whether a state law cause of action is preempted, we look beyond "the form or label of the law" and to the "facts of the particular case." Bos. Child.'s Heart Found., Inc. v. Nadal-Ginard, 73 F.3d 429, 439-40 (1st Cir. 1996); see also Aetna Health Inc. v. Davila, 542 U.S. 200, 214 (2004) ("[D]istinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade' the pre-emptive scope of ERISA simply 'by relabeling their contract claims as claims for tortious breach of contract.'" (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985))).

As Orabona concedes, each of her claims is "premised on . . . Santander's [alleged] pretextual, fraudulent, and

- 13 -

wrongful termination of Orabona for cause in order to [deprive] her of the benefit of Santander's ERISA severance plan."[7]  For several reasons, "[the] court must [thus] evaluate or interpret the terms of the ERISA-regulated plan to determine [Santander's] liability under [Orabona's claims]."  Hampers, 202 F.3d at 52. The court must consult the Severance Policy to determine whether Orabona was ineligible for severance benefits because of the grounds on which Santander terminated her employment.  Because the Severance Policy renders employees terminated for violating the Code of Conduct ineligible for severance benefits, the court must also consult the Code of Conduct in making such a determination. Further, the court would consult the Severance Policy to determine whether Orabona would have been eligible for severance benefits had her employment been terminated under the national layoff rather than for cause.  The court would also consult the Policy to determine whether Santander would exercise its reserved discretion when deciding whether to grant severance benefits.  The Supreme

---

[7]     To the extent that, in spite of this concession, Orabona attempts to argue that her contract and wrongful termination claims are premised on Santander's failure to follow proper procedures in terminating her employment, not on Santander's termination of her employment for the wrongful reason of depriving her of severance benefits, we reject the argument.  Looking beyond "particular label[s] affixed to" Orabona's claims, Davila, 542 U.S. at 214, Orabona's legal theory as to such claims is that Santander failed to follow proper procedures because it terminated her employment not for cause, but to deprive her of severance benefits, and the court must refer to the Severance Policy to determine Santander's liability under such a theory.

Court, this court, and our sister circuit courts have held that state law claims were "related to" ERISA where the employer is alleged to have taken actions to prevent the employee from receiving ERISA plan benefits.

The Ingersoll-Rand decision from the Supreme Court is remarkably similar to the claims here and requires a finding of preemption. In Ingersoll-Rand, the plaintiff had "allege[d] that his pension would have vested in another four months and that a principal reason for his termination was the company's desire to avoid making contributions to his pension fund." 498 U.S. at 135-36. Confronted with the question of whether ERISA "pre-empts a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA," the Supreme Court held that such a claim was preempted because, "in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a [benefits]-defeating motive in terminating the employment." Id. at 135, 140.

First Circuit law also requires a finding that Orabona's claims are preempted. In Otero Carrasquillo, this court held that the plaintiff's analogous state law claim of fraudulent inducement was preempted by ERISA. See 466 F.3d at 20.

> Otero [had] allege[d] that Pharmacia fraudulently induced him to continue his employment at the Arecibo plant by incorrectly

- 15 -

> informing him that he could not apply for
> severance benefits until all fermentation at
> Arecibo was completed, changing the benefits
> application deadline without informing him,
> and falsely promising him a comparable
> position at the company whenever he expressed
> concern for his job security.

Id. We explained that, in order to determine liability, the court must consult the ERISA severance plan "to identify the application dates and the administrative process for determining and informing the employees of such dates" and to "determine whether the offered microbiologist position was 'comparable' to his prior job as a research associate." Id. Recently, in Cannon, we reaffirmed that "an impermissible connection with ERISA exists when 'a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action,'" and held preempted by ERISA the plaintiff's state law wrongful death/punitive damages claim, which was based on an assertion that the defendant's denial of benefits under an ERISA health insurance policy prematurely caused the decedent's death. 132 F.4th at 88-90 (quoting Hampers, 202 F.3d at 52).

Our sister circuit courts have also held "state common law claims of fraudulent or negligent misrepresentation" preempted by ERISA "when the false representations concern the existence or extent of benefits under an employee benefit plan." Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 378 (4th Cir. 2001) (collecting cases from the Fifth, Sixth, Eighth, and Eleventh

circuits); see also Campbell v. Aerospace Corp., 123 F.3d 1308, 1313 (9th Cir. 1997) ("[W]e have held that where the plaintiff's claim or theory alleged that the employer terminated the employee to avoid paying benefits or sought to prevent the discharged employee from obtaining benefits, ERISA preempted the claim."). Orabona concedes that "reference to Santander's ERISA plan may be necessary to determine at least a portion of [her] damages."[8] The combination of all of these factors requiring reference to the ERISA plan documents requires a finding of preemption under 29 U.S.C. § 1144(a).[9]

For related reasons, we hold that at least those of Orabona's claims which seek to recover, under state law, damages and/or other relief for the denial of severance benefits,

---

[8] Indeed, it is unclear what compensatory damages Orabona seeks for her claims beyond damages in the amount of her lost severance benefits. When asked at oral argument what other damages Orabona was seeking, Orabona's counsel initially stated that Orabona was seeking health benefits and participation in "well[ness] programs." During rebuttal, counsel retracted her statement as to health benefits.

[9] Orabona argues: "that the calculation of a portion of Orabona's damages (should she prevail on liability) may necessitate reference to Santander's severance plan, is (standing alone against all other material record facts presented here) plainly an insufficient connection between Orabona's claims and Santander's plan to support ERISA preemption," again relying on cases from our sister circuits for support. We need not reach the issue of whether a claim is preempted only because a court must reference the ERISA plan to calculate damages, because here, a court must also reference the Severance Policy and its inclusion of the Code of Conduct and termination provisions to assess Santander's liability under Orabona's claims.

duplicate, supplement, or supplant the ERISA remedies. Such claims are separately preempted under section 502(a) of ERISA, its civil enforcement provision, which relevantly provides that:

> A civil action may be brought -- (1) by a participant . . . (B) to recover benefits due to h[er] under the terms of h[er] plan . . . [and] (3) . . . (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a). "[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Davila, 542 U.S. at 209.

Orabona attempts an end run around ERISA with allegations that she relied on Santander's allegedly misleading statements in not appealing her termination or applying for benefits, but ERISA provides an exclusive cause of action in precisely such circumstances. Her claims seeking damages for

Santander's termination of her employment to deny her severance benefits "fall[] squarely within the ambit of ERISA § 510," Ingersoll-Rand, 498 U.S. at 142, which relevantly states that "[i]t shall be unlawful for any person to discharge . . . a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an ERISA plan]," 29 U.S.C. § 1140. As the Supreme Court said of the plaintiff's like claim in Ingersoll-Rand, "[w]e have no doubt that this claim is prototypical of the kind Congress intended to cover under § 510," and "§ 502(a) [is] the exclusive remedy for vindicating § 510-protected rights." Id. at 143, 45. Further, as to such claims, Orabona seeks "to recover benefits due to [her] under the terms of [her] plan," for which she had a cause of action under 29 U.S.C. § 1132(a)(1)(B). See Cannon, 132 F.4th at 91-92.

"The mere fact that [Orabona's claims] attempt[] to [seek] remedies beyond those authorized by ERISA § 502(a)," such as punitive damages, "[does not] put the claims outside the scope of the ERISA civil enforcement mechanism." Davila, 542 U.S. at 214-15. Indeed, it further supports preemption. "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state

cause of action did not precisely duplicate the elements of an ERISA claim." Id. at 216.

In short, Orabona could have, but chose not to, file a claim for benefits under the Severance Policy, appeal any denial of benefits, and file a legal claim under ERISA. She may not now file state law claims which "supplant[] the ERISA civil enforcement remedy." Davila, 542 U.S. at 209.

We **affirm** the district court's grant of summary judgment to Santander.